## Commonwealth v. Foulke

*Elmer L. Menges*, for Commonwealth; *Theodore Lane Bean*, for defendant.

CORSON, J., October 19, 1934.—The above defendant was tried upon three bills of indictment, the first charging operating a motor vehicle while under the influence of intoxicating liquor, the second, containing two counts, involving the charge of failing to stop and render assistance at the scene of an automobile accident, and the third charging turning off lights to avoid arrest.

The jury returned verdicts of guilty upon all indictments. The defendant has filed motions for a new trial and in arrest of judgment.

From the testimony, it would appear that on Sunday, October 29, 1933, about 9.45 p. m., on the Skippack Pike, between Blue Bell and Broad Axe, this county, an automobile driven by a Mr. Carman was being operated in an easterly direction toward Broad Axe; and that, while it was so proceeding, a Ford coach coming from the opposite direction, running in a zigzag manner, came into collision with the Carman car. The Ford coach failed to stop after the collision, and although the lights were lighted before the collision they could not be seen after the collision took place. The Ford car, without stopping, proceeded in a westerly direction toward Blue Bell.

The Carman car was damaged but no one injured therein. Sometime later, the occupants of the Carman car and the Rev. Mr. Wilkinson, who had stopped at the scene, saw a car approaching from the direction in which the Ford coach had last been seen. The approaching car was also a Ford coach, and, from the fact that its left front wheel appeared to be damaged, the occupants of the Carman car concluded that it was the same Ford coach that had struck them a short time before.

The Carmans and the Rev. Wilkinson followed the Ford coach and stopped it near Broad Axe. At that time, the defendant Foulke was seated on the right side of the front seat, and a man named Horace Disston was seated behind the wheel. Upon inquiry of Disston as to whether or not he had been in a collision, he replied "No," and that the damage to the wheel had been received when he had run into a wall at Blue Bell.

Apparently the defendant said nothing, and the only evidence as to his condition at that time was the testimony that the smell of what appeared to be alcohol was emanating from the Ford car. The license number of the car being driven by Disston was then taken, and, after investigation, it was discovered that this Ford coach was registered in the name of the defendant.

The Carmans, in company with a State officer, went to the Foulke home, but could not get in and did not see the defendant. They did, however, see the damaged Ford car in the defendant's garage. This statement would seem to cover the salient points in the Commonwealth's case, with the exception of the statement by the justice of the peace who held the hearing, to the effect that the defendant, after the hearing, stated that he had been drinking the night before, did not know what had happened, and was willing to pay all the damages. The defendant did not take the stand in his own defense and submitted only character testimony.

The trial judge, in charging the jury, directed its attention to that part of The Vehicle Code of May 1, 1929, P. L. 905, sec. 1209, which, as amended by the Act of June 22, 1931, P. L. 751, reads as follows: "In any proceeding for a violation of the provisions of this act or any local ordinance, rule or regulation, the registration plate displayed on such motor vehicle shall be prima facie evidence that the owner of such motor vehicle was then operating the same. If at any hearing or proceeding, the owner shall testify, under oath or affirmation, that he was not operating the said motor vehicle at the time of the alleged violation of this act or any local ordinance . . . . and shall submit himself to an examination as to who at that time was operating such motor vehicle, and reveal the name of the person, if known to him . . . . then the prima facie evidence arising from the registration plate shall be overcome and removed and the burden of proof shifted."

The jury was charged that, if it found from the evidence that the car driven by Disston was the same car that had been in collision with the Carman car and that it had the registration plates of the defendant upon it at the time of the collision, that would be prima facie evidence that the defendant was operating the car involved in the collision with the Carmans.

The defendant contends, first, that that part of The Vehicle Code hereinbefore referred to is unconstitutional, and, second, that under any view of the case there was not sufficient testimony to support the verdict of the jury and that the defendant's point for binding instructions should have been sustained.

Defendant contends that The Vehicle Code does not in its title set forth the contents of the act sufficiently to support section 1209. While a similar provi-

sion has been in various motor vehicle codes for at least 15 years, we are unable to find any case bearing directly upon the question of its constitutionality. Apparently, the constitutionality of this section has never been raised in our appellate courts. However, in the case of Orlosky v. Haskell, 304 Pa. 57, 67, the Supreme Court, referring to another section of the same act, said:. "Appellee questions the constitutionality of the Vehicle Code of 1929 because the title makes no reference to the service of process issued out of the courts to counties other than those in which the court has jurisdiction. We resolve the question in favor of the constitutionality of the act. The title to an act does not need to be an index to its provisions: Kaemmerling v. New Castle Township School District, 297 Pa. 44; .Com. v. Macelwee, 294 Pa. 569."

In Commonwealth v. Hendrie et al., 97 Pa. Superior Ct., 328, 330, the court said: "It has been ruled over and over again that it is unnecessary in the title to go into details or to give a general index to an act; nor does it have to include subjects incident to and affected by the general purpose. All that is required of a title is that it must give reasonably clear notice of its subject matter so that anyone interested is imposed with the duty of inquiry as to the contents of the statute."

We feel that, under these authorities, section 1209 is constitutional so far as sufficiency of the title of the act is concerned.

Defendant also contends that the act is unconstitutional in that it deprives the defendant of his liberty without due process of law. Defendant contends that section 1209 destroys the defendant's presumption of innocence in that it shifts the burden upon him to produce evidence that he was not driving the automobile. We feel that this contention cannot be sustained upon the authority of one of the cases which defendant cites in his brief: Mobile, Jackson & Kansas City R. R. Co. v. Turnipseed, 219 U. S. 35.

In that case, a section of the Mississippi Code abrogated the common law fellow-servant rule as to "every employeé of a railroad corporation", and also provided that upon proof of injury by running locomotives, such proof was made prima facie evidence of want of reasonable skill and care on the part of the railroad. The court held this act to be constitutional, and said: "Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, National and State, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. A few of the leading ones are *Adams* v. *New York*, 192 U. S. 585; *People* v. *Cannon*, 139 N. Y. 32; . . . .

"The statute does not, therefore, deny the equal protection of the law or otherwise fail in due process of law, because it creates a presumption of liability, since its operation is only to supply an inference . . . . in the absence of other evidence contradicting such inference. . . .

"If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunty to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him." See also McFarland, Supervisor of Public Accounts, v. American Sugar Refining Co., 241 U. S. 79.; Seaboard Air Line Ry. Co. v. Watson, 287 U. S. 86.

The other side of the case is presented in the case of Bandini Petroleum Co. et al. v. Superior Court, etc., et al., 284 U. S. 8, 19. The court there held: "The

legislative presumption is invalid when it is entirely arbitrary, or creates an invidious discrimination, or operates to deprive a party of a reasonable opportunity to present the pertinent facts in his defense."

Applying these legal tests to section 1209 of The Vehicle Code, supra, we find:

1. There is a rational and reasonable connection between the facts proved and the ultimate fact presumed. The prima facie inference raised would seem to be a natural one and based upon a common experience that as a general rule the owner of a car drives his own vehicle.

2. The section is not "invidiously discriminating" and it does not operate to deprive defendant of a reasonable opportunity to present the pertinent facts in his defense. We must hold, therefore, that section 1209, supra, is not unconstitutional under the due process of law clause of the Federal Constitution and does not violate the provisions of our State Constitution requiring the title of a bill to give reasonable notice of its contents.

We feel, however, that there is more merit in the defendant's second contention, that the evidence was not sufficient to support the verdicts of the jury. Under the bill charging defendant with operating a motor vehicle while intoxicated, the only evidence would seem to be that the Ford car involved in the accident was driven in a zigzag manner; that the odor of alcohol emanated from the Ford car driven by Disston, in which the defendant was seated; and the statement to the magistrate by the defendant that he had been drinking the night before and did not know what had happened.

Clearly, the first two would not be sufficient to support a verdict, and the defendant's statement that he had been drinking the night before and did not know what had happened cannot be taken as evidence either that he was in the car or that he was operating the car which struck the Carman automobile.

The Commonwealth also called Horace Disston as an adverse witness, who testified that in his opinion the defendant was not under the influence of intoxicating liquor. The Commonwealth would seem to be bound by this testimony unless there was contradictory testimony submitted. This would be true even though we consider the witness called as for cross examination: Pagliarulo v. Lippolis, 114 Pa. Superior Ct., 53.

Certainly, the testimony of the magistrate cannot be treated as a confession by the defendant that he was under the influence of intoxicating liquor while driving his automobile, and that his automobile was the car involved in the collision. The verdicts of guilty upon the bills must necessarily be premised upon the finding that the defendant was the operator of the Ford car that came into collision with the Carmans. In order for the jury so to find, it must draw the inference that the car driven by Disston and bearing the registration tag of the defendant was the same car that had been involved in the collision with the Carmans. It must also find that the car at the time of the collision had the defendant's registration tag upon it.

Upon these inferences, the jury must then superimpose the prima facie inference or presumption provided under The Vehicle Code, supra, that the defendant, as the registered owner of such motor vehicle, was driving it at the time of the collision. The jury would thus be required to base a presumption upon an inference. The law, however, does not permit an inference to be drawn from an inference nor a presumption from a presumption: Carroll v. Willow Brook Co. et al., 108 Pa. Superior Ct. 580, 584; Gorman et ux. v. Simon Brahm's Sons,

Inc., 298 Pa. 142, 145; See also the recent case of Watkins v. Prudential Ins. Co. of America, 315 Pa. 497.

While we may be morally certain that the defendant in this case was operating his automobile and was under the influence of liquor, yet we feel that there was not sufficient evidence to support such finding beyond a reasonable doubt. The circumstances were most suspicious, yet it might equally be argued that, if the Ford car driven by Disston had been involved in a collision with the Carmans while being driven by defendant, the defendant would not allow his car to be driven to the scene of the accident such a short time thereafter.

We feel that the defendant's motion in arrest of judgment is not the proper way to raise the question of the sufficiency of the Commonwealth's evidence to support the conviction, and our order in the present case is based upon the ruling in the case of Commonwealth v. Pennsylvania R. R. Co., 72 Pa. Superior Ct. 353, 356.

And now, October 19, 1934, for the reasons given, the defendant's motions in arrest of judgment and for a new trial are refused, the verdicts of the jury are set aside, and the defendant is discharged.