MISSOURI PACIFIC RAILROAD COMPANY ET AL. *v.* OVERTON.

4-4761

Opinion delivered October 25, 1937.

*R. E. Wiley* and *Richard M. Ryan,* for appellants.
*Glover & Glover,* for appellee.

MEHAFFY, J.    The appellee commenced this action in the Hot Spring circuit court against the appellants for personal injuries he alleged he sustained while working for the Acme Brick Company near Malvern, Arkansas, while he was assisting other employees of the brick com-

pany in unloading brick from wheelbarrows into a box car of the appellants. He alleged that while he was performing his duties that the operators of appellants' engine negligently and carelessly, and without warning ran said engine and car into the box car where appellee was working, unloading brick; that, by reason of the force or impact of the cars, the bricks were thrown over the appellee, and he was severely injured in his back and body, and prayed for damages in the sum of $3,000.

The appellants answered and denied all the material allegations in the complaint, and alleged that if appellee had been damaged or injured in any sum, his damages and injury were caused by his own negligence.

There was a jury trial and a verdict and judgment for the sum of $750, and the case is here on appeal.

The appellee testified in substance that on October 16, 1936, he was working in a box car unloading brick, was working with a man named Buckley, and that while they were at work the switch engine came in and he saw it coming; that every day when a car was about to be moved the brakeman would tell them and notify them of the approach of the train. On the day of the injury he saw the engine coming, and they took the plank or runway from the box car, and put it on the platform. This was a rule and witness knew the train was coming in there, and he came out of the car when they had taken the plank up. He knew the engine was coming after the box car, but said they always got orders to get out. Witness testified that when the engine struck the car he was in he fell and brick fell on top of him; that he had suffered ever since his injury, and was under the care of a physician at this time; that Dr. Hodges treated him; that after the brick fell on him he heard the brakeman say to the engineer: "I told you to stop"; that the conductor called his engineer and fireman and said to them: "See what a mess you've made."

The evidence shows that the engine was coming toward the box car and appellee and Buckley got out of the car, and the engine then stopped. They got back in the car to finish their work so that the car could be taken out by the switch engine. Appellee said that the train never

struck a box car that hard before, and every time before he had been warned to get out.

Witness, Herman Gulley, testified to substantially the same things as appellee, and said that he heard someone say: "Why didn't the conductor give a signal to stop?" He also testified that he saw the train coming around the curve, and it stopped about the office.

Dr. McGill testified that he took an X-ray picture and that the picture showed an injury to the region of the articulations, between his fourth and fifth lumbar vertebrae; his back was swollen and stiff in that region. He found that bones or callouses had grown out on appellee's back, and that appellee had a permanent injury.

Dr. Williams, also, testified that his injuries were permanent. Fred Jackson testified for the appellant in substance that he was present when the switch engine of appellants coupled up with the box car; that he heard the warning given to appellee, and saw them come out of the car, and then they went back in the box car; that they expected that the train would be held until the car was loaded.

W. F. Coffman, another witness, testified that he worked for the Acme Brick Company, and was at the other end of the car when the accident happened.

E. L. Buckley testified in substance that he was working for the Acme Brick Company; that the appellee was working in the box car with witness on the day of the accident; he knew that a switch engine was coming in that day to get the box car, and heard it coming in; that he and appellee got out of the box car onto the ground; that he thought they could get back in the car and get it loaded before the train pulled out, and that he and appellee went back into the car. Witness testified about the appellee's falling and brick falling on him. He said he and appellee were already out of the car, and it was not necessary for the brakeman to tell them; that the engine had been stopped a short time, and that sometimes the engine would wait twenty or thirty minutes for them to load; he did not remember about the whistle or bell; the coupling had never knocked down brick before.

C. B. Lawrence, a brakeman for appellants, testified that warning was given, and that the engine stopped before the coupling was made; that he and the engineer worked with signals.

W. J. Dillon, the conductor, testified that they switched in to the Acme Brick Company to get a car, and he saw appellee and Buckley come out, and did not see them go back into the car; that when they went in to get a load of brick they would usually wait when the car was not loaded.

Dr. Hodges testified that he examined the appellee, his foot and ankle, and did not find any abrasions, cuts or wounds.

It was admitted that appellee was working in the box car, and that the train crew knew he was in there. There seems to be no dispute about the fact that after appellee and Buckley got out of the car the engine stopped. They then got back into the car to finish their work so that the railroad company could take the car of brick out. It is, also, undisputed that when the engine would come after the car, they would frequently wait until the loading was finished.

Appellants contend first that there is no evidence to show any negligence on the part of the railroad company or the operators of the switch engine. If the switch engine came to the brick plant, the workmen saw it, and got out of the car and then saw the engine stop; and after it stopped they got back in the car, and the engine was run into the box car without giving any warning, the jury had a right to find that the appellants were guilty of negligence.

The question of the contributory negligence of appellee was, also, a question for the jury.

It is next contended that the court erred in giving appellee's instruction number 1 over the objections and exceptions of appellants. That instruction reads as follows:

"You are instructed that if you find from a preponderance of the evidence in this case that the plaintiff was injured by the operation of one of the trains of the defendant company as alleged in the complaint, then you

are told and instructed by the court that the law presumes negligence on the part of the defendant company, and it will be your duty and you are instructed to find for the plaintiff, unless the defendant has overcome that presumption by a preponderance of the evidence in the case.''

This court has often held that, under § 8562 of Crawford & Moses' Digest, where an injury is caused by the operation of a train, a *prima facie* case of negligence is made out. In other words, where it is shown that an injury is caused by the operation of a train, negligence is presumed; but of course, after evidence is introduced, the jury must find according to the evidence, and their verdict must be supported by the evidence. However, whenever it appears that an injury was caused by the operation of a train, the presumption of negligence arises.

It is next contended that the court erred in giving appellee's instruction No. 2. This instruction told the jury in effect, that if they found for the appellee, and that he was injured in the operation of appellants' engines, the plaintiff would be entitled to recover in this case, and it should so find, if the appellee was himself in the exercise of ordinary care. This was a correct declaration of the law.

Appellants contend that instruction number 6 was erroneous. That instruction told the jury that if they found for the plaintiff, they would find such a sum of money as would reasonably compensate the appellee for his injuries, etc. This was an instruction on the measure of damages, and the objection of appellants was that there was no proof that appellee's injury was caused by the negligence of appellants, and, also, that there is no evidence that appellee was injured permanently or otherwise. These are the only objections urged to this instruction. Besides, this is an instruction on the measure of damages, and appellants do not contend that the amount of damages awarded is excessive.

Appellants, also, contend that the court erred in giving appellee's instruction number 7. This instruction was correctly given under § 8575 of Crawford & Moses' Digest.

Appellants contend that the court erred in refusing to give their instruction number 1A. This was a peremptory instruction, and while the evidence was in conflict, there was sufficient evidence of negligence to submit the case to the jury, and the jury's finding on this question is conclusive.

We find no error, and the judgment is affirmed.