MISSOURI PACIFIC RAILROAD COMPANY *v.* BEARD, ADMR.

4-5499                                        128 S. W. 2d 697

Opinion delivered May 22, 1939.

*R. E. Wiley* and *E. W. Moorhead*, for appellant.

*E. W. Brockman*, for appelleé.

GRIFFIN SMITH, C. J. Guy A. Thompson, trustee for Missouri Pacific Railroad Company, has appealed from a judgement of $3,733.33 in favor of Chester F. Beard, individually and as administrator. Of the sum awarded, $3,333.33 was for suffering endured by Chester H. Beard, twelve year old son of the administrator, who died from injuries sustained when he was struck by a train. Four hundred dollars was allowed to compensate expenditures made by the father as cost of funeral and medical attention.

The jury found in favor of the defendant on an allegation that Chester F. Beard had sustained damages of $2,500 in consequence of the loss of his son's services and contributions during minority. It also found in favor of Bob Emerson, engineer, who had been sued jointly with the trustee. The plaintiff, personally, but not as administrator, has cross appealed, contending that the jury, in finding for the engineer on all counts, and in favor of Thompson as trustee on the question of contribution, acted arbitrarily, and that its finding is contrary to the evidence.

August 30, 1937, about 9:15 in the morning, Chester H. Beard and Willie Bob Horne were riding double on a pony. Willie was in the saddle, with Chester behind him. It is alleged that as they proceeded in this manner

at a slow gait, going east on the public street which crosses the railroad at right angle, a passenger train operated at a high rate of speed struck and fatally injured the boys. Chester lived three hours and fifteen minutes. On behalf of the plaintiff-administrator it was insisted that Chester was conscious for some time and experienced severe pain. The defendants' contention was that the impact rendered the boy instantly unconscious, and that he remained so until death.

The railway through Dumas runs almost due north and south. The gravel street over which the boys were riding extends east and west. The passenger train northbound from McGehee to Little Rock had a schedule of 60 miles per hour; but, according to the testimony of G. A. Ford, fireman, the speed actually being maintained on the day in question was 45 miles, and this was reduced to 25 miles when the city limits of Dumas were reached. The complaint alleged that a speed of approximately 60 miles was being maintained through the town. Some witnesses estimated the speed as high as 70 miles.

At a point 366½ feet south of the highway crossing, a railway sidetrack taps the main line on the west, and for 200 feet or more south of the crossing the sidetrack parallels the main line, the distance between the two tracks being 21 feet.[1] West of the sidetrack and paralleling it 69 feet are a coal bin and seed house. Distance between the center line of the sidetrack and the coal bin and seed house is seven feet. From street center to the north end of the coal bin the distance is about 20 feet.

Engineer Emerson, after verifying the fireman's testimony that in entering the city limits, speed had been reduced to 25 miles, stated that as the train traveled north the fireman was on the west side of the engine. The first information witness had that an accident had occurred was when the fireman stood up in the cab and said "stop"! The track was practically level. Emergency brakes were applied. Lapsed time between notice of danger and effective application of the brakes—that is,

---

[1] The measurement is from the center of the main line, and not from the west rail.

the period of mental and physical reaction, plus the time required for mechanical operation and transmission of power to brake contacts, was approximately three seconds. During that period a train traveling 25 miles an hour (36.83 feet per second) would move 110.49 feet. At 25 miles, a train such as the one being operated at the time in question, could not be stopped under 450 feet. From the engineer's position in the cab, the left rail of the track can be seen at a distance of 165 feet.

Fireman Ford, while insisting that he was keeping a constant lookout, did not see the boys until the engine was within 50 or 55 feet of the crossing. This statement was modified when he said that the engine was "just about the south end of the seed house".[2] When the train came to a stop the rear car was over the crossing. Witness saw the pony and boys "when they got over about the center of the house track. The instant I saw [the pony] it loped right in there. When I first saw it, we were within 50 feet of the crossing, and the boys were about 14 feet away. . .. . The boys were riding the horse ten miles an hour, or fifteen feet a second."

R. A. Minor "saw the horse rear up and the train hit it."

Matthew Horne testified: "Just as [the boys] rode on the track the boy in front tried to pull his little pony off the track, and the pony reared up and the engine hit him. He hadn't more than got on his hind feet before the engine hit him."

Testimony was conflicting on the question whether warnings were sounded by bell or whistle. Effect of the jury's verdict was to find that they were not.

Approximate and relative distances are shown by testimony of the fireman. Although estimating that when he first saw the boys they had "loped into sight" from

[2] Distance from road center to the south end of the seed house is approximately 89 feet. Actual measurement from road center to the north end of the coal bin is not given, and statement in the opinion that the distance is 20 feet is an estimate based upon relative distances as reflected by the blue print supplied.

around the coal bin, and were 14 feet from the track, riding 10 miles per hour, and at that time the engine was 50 or 55 feet from the crossing, the explanation is necessarily qualified by the additional statement that when he saw the boys the engine was about even with the south side of the seed house. This would place the point of initial observation at 89 feet, instead of 50 or 55, and at 25 miles per hour (36.83 feet per second) almost two and a half seconds would be required to cover the distance. Within that time the boys, traveling 10 miles per hour (14.66 feet per second) would have advanced 36.65 feet— and they were only 14 feet from the track. One of five things is suggested: the fireman was mistaken in saying he saw the boys when the engine was at the south end of the seed house; or, he was in error in saying they were within 14 feet of the track; or, they were not riding at a speed of 10 miles per hour; or, the train's speed was in excess of 25 miles; or, the pony stopped on the track.

Photographs and blue prints show, as physical facts, that if the fireman had been keeping a constant lookout, he would, at a distance of 89 feet, have seen the boys when they were 25 to 28 feet from the track. On the other hand, if the fireman's minimum estimate of 50 or 55 feet is correct (the distance the engine was from the crossing when the pony first loped into view), the boys were, at that time, from 30 to 35 feet from the crossing. If the distance had been only 14 feet, it matters not from which point the fireman discovered them, for in either event there was not sufficient time for the engineer to have made an effective stop. Conversely, if from a distance of 50 or 55 feet from the crossing the fireman was keeping a watch and the boys were not visible until the engine reached that point, they must have been 25 to 35 feet from the main track, and could not have reached the place of tragedy ahead of the train.

Some one was mistaken. With the evidence in this condition, the questions of negligence and comparative negligence should have been submitted to the jury under proper instructions.

But the judgments must be reversed because of erroneous instructions. By Instruction No. 1[3] the jury was told to find for the plaintiff unless the defendants had, by a preponderance of the evidence, overcome the statutory presumption of negligence. There were general and specific objections. Specifically, it was urged that the instruction was incorrect and prejudicial ''For the reason that it places an unlawful burden upon the defendants to show more than enough evidence to overcome the *prima facie* rule'' . . . ''in violation of the Arkansas rules of law on evidence, and in violation of the Constitution of the United States, Fourteenth Amendment.''

The trial court thought the instruction justified under § 11138, Pope's Digest.[4]

In *St. Louis-San Francisco Railway Company* v. *Cole,* 181 Ark. 780, 27 S. W. 2nd 992, we discussed a question similar to that presented by the instruction here complained of. It was there said:

· ''It is the established doctrine of this State . . . that where an injury is caused by the operation of a railway train, a *prima facie* case of negligence is made against the company operating such train. When the evidence shows that an injury was caused by the operation of a train, the presumption is that the company operating the train is guilty of negligence, and the burden is upon such company to prove that it was not guilty of negligence. . . . The Supreme Court of the United States recently said, in construing a statute similar to the Arkansas statute: 'The only legal effect of this inference

[3] Instruction No. 1 is: ''It being admitted in this case that the plaintiff's son, Chester H. Beard, was killed by the operation of one of the trains of the defendant company as alleged in the complaint, you are told therefore that the law presumes negligence on the part of the defendant company, and it will be your duty, and you are instructed, to find for the plaintiff, unless the defendant has overcome that presumption by a preponderance of the evidence in the case.''

[4] Pope's Digest, § 11138: ''All railroads which are now or may hereafter be built and operated in whole or in part in this state shall be responsible for all damages to persons and property done or caused by the running of trains in this state.''

is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence.'[5]

"In construing the Mississippi statute, the Supreme Court of the United States said: 'It did not . . . fail of due process of law because it creates a presumption of liability, since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference. The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. . . . That of Georgia, as considered in this case, creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate. The presumption . . . is unreasonable and arbitrary, and violates. the due process clause in the Fourteenth Amendment.'[6]

"Under the construction placed upon statutes like ours, the presumption of negligence is at an end when the railroad company introduces evidence to contradict it, and the presumption cannot be considered with the other evidence, because to do this would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the Fourteenth Amendment. Therefore, in determining whether the evidence in this case is legally sufficient to support the verdict, we cannot consider the presumption created by the statute, but must determine the question from the evidence introduced."

The instruction in the case at bar told the jury, without qualification or reservation, to find for the plaintiff unless the defendants had overcome the legal presumption of negligence by a preponderance of the evidence.

This court has held that an instruction which omits an essential element of defense, but directs the jury to find for the plaintiff if other factors concur, is inherently

---

[5] *Western & A. R. R. Co.* v. *Henderson*, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884.

[6] Same citation as Note 5.

wrong and the prejudice cannot be overcome by other correct instructions. In *Vaughan v. Herring*[7] there is this declaration of the law: "Each of the instructions is long and we deem it unnecessary to set them out, but to simply state that each of them left to the jury-the determination of the appellant's conduct as the sole issue of the jury's verdict and made no reference whatever to the defense interposed that appellee himself was guilty of contributory negligence which was the proximate cause of his injury, and then said that in that event you will find for appellee. It is true that other instructions were given by the court relative to the issue of contributory negligence on the part of appellee, but they did not have the effect of curing the error. . . . 'An instruction is inherently erroneous, and therefore prejudicial, which leaves out of consideration the plaintiff's contributory negligence or his assumption of risk, and leaves to the jury the determination of the defendant's conduct as the sole issue of the jury's verdict, by concluding with the phrase, "you will find for the plaintiff," since, under the evidence, the conduct of the plaintiff as well as that of the defendant is essential to a proper verdict'."[8]

In the instant case there was included in the instruction an element wholly foreign to the issue then before the jury, the effect of which was to tell the finders of facts that the legal presumption of negligence attended the trial throughout; that irrespective of defense testimony it continued as a burden against the defendants which they could overcome only by a preponderance of the evidence; and failing to produce this quantum of evidence, the defendants were legally adjudged to be negligent, regardless of any testimony less than a preponderance which they may have offered.

The instruction is also erroneous in that it did not submit to the jury the defense of contributory negligence. It is urged that because of his immature years, Chester

---

[7] 195 Ark. 639, 113 S. W. 2d 512.

[8] *Temple Cotton Oil Co.* v. *Skinner*, 176 Ark. 17, 2 S. W. 2d 676; *Garrison Company* v. *Lawson*, 171 Ark. 1122, 287 S. W. 396; *Natural Gas & Fuel Company* v. *Lyles*, 174 Ark. 146, 294 S. W. 395.

could not be guilty of contributory negligence, in that he did not have the experience and training necessary to an appreciation of the dangers involved. While this reasoning may apply in certain cases, it is not a rule of law, and the jury, under proper instructions, should determine whether, in the particular circumstance, there was, or was not, an understanding or appreciation of the dangers.

For the errors indicated, the judgments are reversed and the causes are remanded for a new trial. It is so ordered.