St. Louis-San Francisco Railway Company *v.* Mangum.

4-5760                                          136 S. W. 2d 158.

Opinion delivered January 29, 1940.

*J. W. Jamison, Paul E. Gutensohn* and *Warner & Warner,* for appellants.

*Howell & Howell,* for appellee.

MEHAFFY, J. The appellee, W. J. Mangum, about August 8, 1938, was engaged in hauling rock with a wagon and team along and over a certain highway crossing of appellant's railroad going in a westerly direction and upon reaching said crossing of the highway with appellant's railroad, and in attempting to cross said crossing which he alleged was kept and maintained by said railroad in a very negligent, dangerous and hazardous condition, and while said team was on appellant's track and highway crossing, a certain clevis connecting the singletree with the doubletree on said wagon broke and came loose and the said team was unable to pull said wagon over and across said railroad, and while the appellee and his companion were trying to get the team off the said railroad crossing, appellant's passenger train, traveling in a southernly direction, approached said crossing with said highway without ringing the bell, blowing the whistle or giving any signal or warning whatever of such approach, and he alleged that in approaching said crossing the appellant's engineer and fireman operated said locomotive at a careless and negligent rate of speed, to-wit, 50 miles an hour, and that they carelessly and negligently failed to exercise ordinary and reasonable care to keep and maintain a reasonable lookout for persons and property, and particularly appellee and his wagon and team he was using in approaching in and about and on said crossing, so that as a result thereof, the said team and wagon were struck by said locomotive so operated and the appellee seriously and permanently injured. He alleges that his injuries and damages were caused by the carelessness and negligence of appellants in the following particulars: That the servants, agents and employees of appellant carelessly and negligently approached said crossing on said track the same being an extremely dangerous crossing, operated said locomotive and train without exercising ordinary and reasonable care to ring the bell or blow the whistle or otherwise give a signal or warning of the

approach of said train to said crossing, and carelessly and negligently approached said crossing without exercising ordinary and reasonable care to keep and maintain a lookout for persons and property, and particularly for appellee and the team and wagon which he was driving; that they carelessly and negligently approached said crossing at a reckless rate of speed, 50 miles per hour, and carelessly and negligently approached and ran into said dangerous crossing without exercising any precaution for the protection of persons and property approaching on said highway. On account of the negligence of appellants the team and wagon being used and driven by appellee was struck and collided with the locomotive, and appellee was thrown into a ditch beside the track and the team was knocked and thrown against and upon him with great force and violence, thereby seriously and permanently injuring him. Appellee was thrown into a ditch beside the track and the team was thrown upon and against his body, and the bones, flesh, tendons, muscles and ligaments in and about appellee's back and spine were fractured, crushed, injured and torn; his face and head and parts thereof were cut, bruised and damaged; his back and spine and entire nervous system were shocked and injured. He prays for damages in the sum of $3,000.

Appellants filed answer specifically denying all the material allegations of the complaint, and pleading specifically the contributory negligence of appellee.

There was a verdict and judgment for the appellee and the case is here on appeal.

Appellee testified that on August 8th he was hauling rock; that the railroad maintains a crossing, and he had made three loads and was crossing with the third load at the time of the collision; the crossing was fenced and had gates on both sides, and on one side dirt was thrown up to the end of the ties; as he was going across the crossing he dropped down in a sink hole about the time the wheel hit; the railway crossing was down and water had been standing there; the wagon dropped down in the hole against the rail, and when it did it broke a clevis on the left-hand horse and it could not pull the load;

witness backed up to fix it, gave the horse about a foot clearance, and while he was working there the train came around the curve; it did not whistle and did not ring a bell until it gave five blasts and then it rang the bell; it did not apply brakes until it hit the mare; when he discovered the train coming he ran to the horses' heads and grabbed them with the intention of getting them in the clear; they broke the wagon tongue out and he was bringing the horses around to his right; the train hit the left-hand mare and knocked her over the tongue and over the other one and on top of appellee; he was trying to get them in the clear of the train at the time; was about five feet from the rail at the time the train hit the mare; was in the ditch and the mare was between him and the track at the time; one mare was killed. He then describes his injury. A statement made by appellee after the accident was introduced.

The testimony also showed that there was a curve that the train passed before it reached the crossing, and that it was going at a speed of about 40 or 50 miles an hour. The conductor testified that it was going 40 miles an hour. There was also evidence that there were no signals or alarms given, and no warning of the approach of the train until appellee heard the five blasts.

There is very little conflict in the evidence. There is, however, some conflict, and as to what was the truth, where there was a conflict, was a question for the jury. There was ample evidence to submit to the jury the question of the negligence of the appellants and also the contributory negligence of the appellee, and, on the facts, the verdict of the jury is binding.

It is urged by the appellants that the court erred in giving instruction No. 3 requested by the appellee. That instruction is as follows:

"You are instructed that under the laws of the state of Arkansas when any person is injured or killed by the running of a railroad train the law presumes that said injury or death was negligently done by the railroad company. To avoid liability for such injury the company must show by a preponderance of the evidence that the injury was not the result of negligence of the rail-

road company or it may show that if it was the result of negligence on the part of the railroad company that the plaintiff was guilty of negligence in a degree equal to or greater than the negligence, if any, of the railroad company. So in this case if you find that the plaintiff was injured by the running of a railroad train, the law presumes that the injury was negligently done unless the railroad company shows by a preponderance of the evidence that the injury was not the result of the negligence of the railroad company or that the plaintiff himself was guilty of negligence equal to or greater than that of the railroad company, if any."

Appellee argues that the jury could not have been misled by the giving of instruction No. 3, and also that the specific objection was on the ground that the instruction was abstract and that there was no true guide for the jury as to contributory negligence on the part of the appellee.

It is true that the court also told the jury that they were not to pick out any single one of the instructions, but should consider all of the instructions given as the law governing them in the consideration of this case.

The Supreme Court of the United States, in the case of *Western & Atlantic Rd. Co.* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, said, in discussing an instruction similar to the one here involved: "The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury upon all of the evidence." The court further said, in discussing the Georgia and Mississippi statutes: "The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. . . . That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate."

The vice of instruction No. 3 is that it gives effect to the presumption and it is to be weighed against op-

posing testimony and is to prevail unless such testimony is found by the jury to preponderate. In other words, the instruction tells the jury that the appellee is entitled to recover when it is shown by the evidence that the injury was caused by the operation of a train, unless the railroad company introduces evidence that preponderates, or shows by a preponderance of the evidence that it was not guilty of negligence.

In the case of *St. Louis-San Francisco Ry. Co.* v. *Cole,* 181 Ark. 780, 27 S. W. 2d 992, we followed the decision of the United States Supreme Court, *supra,* and quoted as follows from that opinion: ''The only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done the inference is at an end, and the question of negligence is one for the jury upon all the evidence.''

Under § 11138 of Pope's Digest, railroad companies are made responsible for all damages to persons or property done or caused by the running of trains in this state. Under the decisions of the Supreme Court of the United States and our own decisions, when one is shown to have been injured by the operation of a train in this state, it creates a presumption of negligence and the burden is then upon the railroad company to produce some evidence to the contrary. When it does that, however, the presumption is at an end and the question of negligence is one for the jury upon all the evidence; the presumption or inference cannot be considered by the jury as evidence, but it is at an end and the jury must then pass upon the question of negligence from all the evidence introduced.

To permit the presumption to be considered as evidence after other evidence has been introduced, would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the Fourteenth Amendment.

The principle considered in the case of *Western & Atlantic Rd. Co.* v. *Henderson, supra,* has been considered and discussed by the Supreme Court of the United States in several cases since that time. The same principle was

announced in the following cases: *Bandini Petroleum Co.* v. *Superior Ct. Los Angeles County, Calif.*, 284 U. S. 8, 52 S. Ct. 103, 76 L. Ed. 136, 78 A. L. R. 826; *Seaboard Airline Rd. Co.* v. *Watson*, 287 U. S. 86, 53 S. Ct. 32, 77 L. Ed. 180, 86 A. L. R. 174; *Georgia Ry. & Electric Co.* v. *Decatur*, 295 U. S. 165, 55 S. Ct. 701, 79 L. Ed. 1365; *N. Y. Life Ins. Co.* v. *Gamer, Extr'x.*, 303 U. S. 161, 58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218.

A recent case decided by this court, *Mo. Pac. Rd. Co.* v. *Beard, Admr.*, 198 Ark. 346, 128 S. W. 2d 697, 1939, held that an instruction similar to the one given in this case was erroneous, and held that the only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done the inference is at an end, and the question of negligence is one for the jury upon all the evidence. To the same effect is the case of *Mo. Pac. Rd. Co.* v. *Ross, ante* p. 182, 133 S. W. 2d 29. In other words, after evidence is introduced, the presumption of negligence passes out, and whether the railroad company is negligent is determined from all the evidence introduced. This question was not only thoroughly discussed by the Supreme Court of the United States in the cases cited, but also in the cases by this court above cited. It would serve no useful purpose to discuss it further here.

We find no error except the error in the giving of instruction No. 3, and for this error the judgment is reversed, and the cause remanded for a new trial.