St. Louis-San Francisco Railway Company *v.* Hovley.

4-5732 137 S. W. 2d 231

Original opinion delivered January 29, 1940.

Opinion on rehearing delivered March 4, 1940.

*Westbrooke & Westbrooke* and *J. W. Jamison,* for appellant.

*Cunningham & Cunningham,* for appellee.

HOLT, J. Appellants appeal from a judgment of $25,000 awarded appellees in the eastern district of the Lawrence circuit court, for damages growing out of a crossing collision which resulted in the death of appellees' intestate, Vincent E. Hovley.

Among the acts of negligence on the part of appellants' servants, set out in appellees' complaint, was one charging the failure to give the statutory signals in approaching the crossing in question. This one act of negligence alone was relied upon by appellees at the trial of this case and the only one submitted to the jury for its consideration.

The answer of appellants denied that it failed to give the statutory signals, and in addition pleaded the contributory negligence of appellees' intestate.

The evidence as reflected by the record is to the following effect:

Appellees' intestate, Vincent E. Hovley, a resident of St. Louis, Missouri, was traveling through Arkansas to Texas, where he was employed. After spending the night at Walnut Ridge, on the morning of June 14, 1935, he drove his automobile upon highway 67 and reached the town of Hoxie at about six o'clock a. m. The morning was misty and foggy. He approached the point where appellants' main track crosses the highway, at a rate of speed estimated at 25 or 30 miles per hour, and without stopping his car, in attempting to pass over the crossing, his car was struck by one of appellants' trains and Hovley was instantly killed.

He was at the time 26 years of age, married, earning $45 and expenses per week, and had a life expectancy of 38.12 years. His wife and a child survived him.

On behalf of appellees, witness, Woodyard, testified that he was at Hoxie when appellants' train hit a car and killed a man about 75 or 80 feet from where he was standing. He noticed the train just as it went over the crossing. The bell was not ringing. The whistle sounded the first time, he thought, at the first block, possibly 1,200 or 1,400 feet back up the track.

Clyde Mealer testified that he was 30 or 40 feet from the point where the collision occurred. He first noticed the approach of the train when it whistled on the west crossing coming into town. He was standing there, heard the automobile coming and knew somebody was going to make connection there because he knew the train did not stop before it got to the station, and that he stepped in front of the bus standing near him and threw up his hands against the driver of the automobile, but that if he saw him he paid no attention.

He further testified that he did not hear the bell ringing or other alarm except the whistle at the west crossing. He saw the man when he was struck, and he probably discovered the on-coming train and pulled to the left as the train hit him. There were eight coaches

on the train. The rear end of the rear coach was about midway of the highway when the train stopped.

Lester Bennett, for appellees, testified that he was standing in front of the post office about 300 feet away from the collision when it happened. The whistle blew at the crossing above, and that was the last time he noticed the whistle. That the bell was not ringing and the whistle did not blow for the crossing down there at the highway. He judged the deceased was traveling 25 or 35 miles an hour. It was a damp, foggy morning and raining just a little.

Will Fisher testified that he was in his back lot at the time of the collision and heard the crash. He heard the air whistle a few seconds before the crash; never noticed hearing the bell. The air whistle made a kind of squeally noise like a truck or a bus horn, and was not as loud as a steam whistle.

There was other testimony of a corroborative nature.

Upon a trial to a jury there was a verdict in favor of appellees, as above indicated, in the sum of $25,000, and from a judgment on this verdict comes this appeal.

It is insisted here that the evidence does not sustain the verdict.

After a careful review of the evidence as presented by this record, we have reached the conclusion that appellees' intestate, Hovley, was guilty of negligence contributing to his death; however, it does not follow that the right of his administratrix to recover damages for his death is defeated on that account.

Since our legislature enacted act 156 of the General Acts of 1919, now appearing as § 11153 of Pope's Digest, and commonly referred to as the comparative negligence statute, the contributory negligence of a person killed does not defeat a recovery in cases of this character where such negligence was less than that of the operatives of the train causing the death.

The instant case was submitted to the jury upon evidence legally sufficient to support the finding that the negligence of the deceased was less than that of the op-

eratives of the train, and we would not be warranted in saying, as a matter of law, that deceased's negligence was equal to or greater than that of appellants' servants.

In this connection it may also be observed that this is the third appeal in this case. The first appeal appears in 193 Ark. 580, 102 S. W. 2d 845, and the second appeal in 196 Ark. 775, 120 S. W. 2d 14. A reversal was had in each of these cases for erroneous instructions, and not because the evidence was insufficient to go to the jury. Appellants concede in their brief that "With the exception of the testimony of Lester Bennett the evidence in the first trial of this case was as it is here." Bennett's testimony is in addition to the testimony given on the former trials.

Appellants next insist that the verdict is excessive, and we think this contention must be sustained.

In this case there was no recovery sought, or had, for pain and suffering; the deceased, Hovley, having been killed instantly. The amount of recovery allowed by the jury convinces us that it did not take into account the degree of negligence which we think must be charged to appellees' intestate. While there is no hard and fast rule, or yardstick, by which a jury must be bound in determining the measure, or difference, between the negligence of the deceased and that of appellants' servants, and placing a money value on same, we think that a recovery of $25,000 on the facts in this record is excessive, and that a recovery above $15,000 would not be warranted. This error, however, may be corrected by a remittitur.

We have reached the conclusion, therefore, that a verdict in the sum of $15,000 would be a reasonable sum, and that the jury would not have been warranted in returning a verdict for a larger sum. If the appellees will cause a remittitur to be entered within 15 days for all in excess of $15,000, the judgment will be affirmed here for that amount and apportioned as the judgment herein appealed from; otherwise the judgment will be reversed, and the cause remanded for a new trial.

OPINION ON REHEARING

HOLT, J. In their brief on rehearing, counsel for appellants call to our attention, and urge as error, the giving by the trial court of appellees' requested instruction No. 3 and that this assignment was overlooked in the original opinion.

Instruction No. 3 is as follows:

"I instruct you that where an automobile is struck upon a public crossing in this state by trains operated over the crossing by a railroad that the law presumes negligence upon the part of the railroad and its employees, and in this case, should you find that the deceased, Vincent E. Hovley, while driving his car on Highway 67 across Frisco Railroad crossing in the town of Hoxie, Arkansas, was struck by a train moved over such crossing by the defendant and its employees, the law presumes that the resulting damage from such collision was due to the negligence upon the part of the defendant. The defendants to avoid liability may show by preponderance of the evidence that the striking of such automobile was not the result of negligence upon the part of the railroad or its employees or that the plaintiff himself was guilty of negligence equal to or a greater degree than that of the defendants or their employees."

Upon reconsideration we have reached the conclusion that appellants' contention must be sustained and, therefore, the giving of this instruction constituted reversible error.

Since the decision of the Supreme Court of the United States in the case of *Western & Atlantic Rd. Co.* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, this court has condemned instructions similar to this one, and has held the giving of instructions such as the above to be reversible error.

In the recent case of *St. Louis-San Francisco Railway Co.* v. *Mangum, ante,* p. 767, 136 S. W. 2d 158, this court said:

"The Supreme Court of the United States, in the case of *Western & Atlantic Rd. Co.* v. *Henderson,* 279 U. S. 639, said, in discussing an instruction similar to

the one here involved: 'The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury upon all of the evidence.' The court further said, in discussing the Georgia and Mississippi statutes: 'The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. . . . That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate.'

"The vice of instruction No. 3 is that it gives effect to the presumption and it is to be weighed against opposing testimony and is to prevail unless such testimony is found by the jury to preponderate. In other words, the instruction tells the jury that the appellee is entitled to recover when it is shown by the evidence that the injury was caused by the operation of a train, unless the railroad company introduces evidence that preponderates, or shows by a preponderance of the evidence that it was not guilty of negligence.

"In the case of *St. Louis-San Francisco Ry. Co.* v. *Cole,* 181 Ark. 780, 27 S. W. 2d 992, we followed the decision of the United States Supreme Court, *supra,* and quoted as follows from that opinion:

" 'The only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence.'

"Under § 11138 of Pope's Digest, railroad companies are made responsible for all damages to persons or property done or caused by the running of trains in this state. Under the decisions of the Supreme Court of the United States and our own decisions, when one is shown to have been injured by the operation of a train in this state, it creates a presumption of negligence and the burden is then upon the railroad company to produce some evidence to the contrary. When it does that, however, the

presumption is at an end and the question of negligence is one for the jury upon all the evidence; the presumption or inference cannot be considered by the jury as evidence, but it is at an end and the jury must then pass upon the question of negligence from all the evidence introduced.

"To permit the presumption to be considered as evidence after other evidence has been introduced, would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the Fourteenth Amendment.

"The principle considered in the case of *Western & Atlantic Rd. Co.* v. *Henderson, supra,* has been considered and discussed by the Supreme Court of the United States in several cases since that time. The same principle was announced in the following cases: *Bandini Petroleum Co.* v. *Superior Ct. Los Angeles County, Calif.,* 284 U. S. 8, 52 S. Ct. 103, 76 L. Ed. 136, 78 A. L. R. 826; *Seaboard Airline Rd. Co.* v. *Watson,* 287 U. S. 86, 53 S. Ct. 32, 77 L. Ed. 180, 86 A. L. R. 174; *Georgia Ry & Electric Co.* v. *Decatur,* 295 U. S. 165, 55 S. Ct. 701, 79 L. Ed. 1365; *New York Life Ins. Co.* v. *Gamer, Extrx.,* 303 U. S. 161, 58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218.

"A recent case decided by this court, *Mo. Pac. Rd. Co.* v. *Beard, Admr.,* 198 Ark. 346, 128 S. W. 2d 697, held that an instruction similar to the one given in this case was erroneous, and held that the only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done the inference is at an end, and the question of negligence is one for the jury upon all the evidence. To the same effect is the case of *Mo. Pac. Rd. Co.* v. *Ross, ante,* p. 182, 133 S. W. 2d 29. In other words, after evidence is introduced, the presumption of negligence passes out, and whether the railroad company is negligent is determined from all the evidence introduced. This question was not only thoroughly discussed by the Supreme Court of the United States in the cases cited, but also in the cases by this court above cited."

We conclude, therefore, that on account of the error of the trial court in giving appellees' instruction No. 3,

the petition for rehearing must be granted, and accordingly the judgment is reversed and the cause remanded for a new trial.