POOLE v. STATE.

4480                                                     207 S. W. 2d 725

Opinion delivered January 26, 1948.

*Everard Weisburd,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

Ed. F. McFADDIN, Justice. On September 23, 1947, appellant, Floyd Lee Poole, was convicted of rape (§ 3403, Pope's Digest), and sentenced to death. He brings

this appeal; and § 4257, Pope's Digest, prescribes the extent of the review. There were eight objections made by the defendant in the course of the trial. We find it necessary to discuss only the one objection that necessitates a reversal.

On July 19, 1945, an information was filed charging Floyd Lee Poole * (hereinafter referred to as "defendant") with the crime of rape, alleged to have been committed on April 13, 1945. On July 20, 1945, the circuit court—upon suggestion that insanity might be an issue—ordered the defendant committed to the State Hospital for examination as provided by Initiated Act No. 3 of 1936 (see p. 1384, et seq., of the Acts of 1937). A report was duly made by the superintendent of the State Hospital (who, at that time, was Dr. A. C. Kolb) under date of August 21, 1945, stating that the defendant was then insane and was probably insane at the time of the alleged offense.

Thereupon—on February 18, 1946,—the circuit court made an order (hereinafter referred to as the "1946 order"), reading as follows:

"On this 18th day of February, 1946, this cause coming on for trial, comes the State of Arkansas, by James C. Hale, Prosecuting Attorney for the Second Judicial District, the defendant, Floyd Lee Poole in custody of the Sheriff of Crittenden county and by his attorney of record, Edward J. Reubens, and upon formal arraignment in open court, the defendant by his counsel entered a plea of not guilty by reason of insanity to the charge of rape as alleged in the proper information heretofore filed in this court.

"Counsel for the defendant stated in open court that the defendant had been examined by Dr. James R. Falls, a competent doctor of medicine of his own choosing, and that he was, at the time of the commission of said offense, and is now, *non compos mentis;* that the report of Dr. A. C. Kolb, Superintendent of the Arkansas State Hospital for Nervous Diseases, which had hereto-

* In some instances in the record the name is spelled *Pool*; in others, *Poole*. The person is the same.

fore been made a part of this record was in all respects accepted as true and relied upon by the defendant; that such report of Dr. A. C. Kolb found that the defendant was suffering from cerebrospinal syphilis, is not now legally responsible for his actions, and was not legally responsible for his actions at the time of the commission of the offense for which defendant stands charged.

"Being fully advised in the premises the court doth find that the defendant, Floyd Lee Poole, is insane and not legally responsible for his actions; that the defendant was insane and not legally responsible for his acts at the time of the commission of the felony with which he stands charged; that the defendant, Floyd Lee Poole, should be confined in the Arkansas State Hospital for Nervous Diseases as provided by law.

"It is, therefore, the order and judgment of this court that Floyd Lee Poole be taken by the Sheriff of Crittenden county and delivered to the Arkansas State Hospital for Nervous Diseases to be confined therein as provided in § 16 of Act 241 of the Acts of the State of Arkansas for the year 1943.

"It is the further order and judgment of this court that all further action in this cause be stayed and held in abeyance by reason of the insanity of the defendant until the further order and direction of this court."

On January 13, 1947, the defendant (having escaped from the State Hospital) was found at large, and was taken in custody by the Sheriff of the county and brought before the Crittenden Circuit Court; and an order was made (hereinafter referred to as the "1947 order"), in part as follows:

"On this 13th day of January, 1947, this matter being brought before this court, comes the State of Arkansas by James C. Hale, Prosecuting Attorney within and for the Second Judicial District, and the Defendant, Floyd Lee Poole, in the custody of the Sheriff of Crittenden county.

"Being fully advised in the premises the court doth find:

"That Floyd Lee Poole was properly charged with the crime of rape by information filed on the 19th day of July, 1945; that this court subsequently on the 20th day of July, 1945, entered its order directing the defendant to be delivered to the State Hospital for Nervous Diseases for observation and examination, the insanity of the defendant having been properly suggested; that thereafter on the 21st day of August, 1945, the State Hospital for Nervous Diseases by and through Dr. A. C. Kolb, the Superintendent thereof, furnished this court with a report of the examination of the defendant which report stated that the defendant, Floyd Lee Poole, was diagnosed as having psychosis with cerebrospinal syphilis and that he was not legally responsible for his acts at the time of the examination or at the time of the alleged crime. The court thereupon entered its order on February 18, 1946, committing the defendant, Floyd Lee Poole, to the State Hospital for Nervous Diseases according to the provisions of § 16 of Act 241 of the Acts of Arkansas for the year 1943.

"Being further advised in the premises the court doth find . . . that the defendant was not properly confined and on two occasions thereafter departed from the institution and resumed the illegal acts . . . ; that the Sheriff of Crittenden county was again advised and again took the defendant into custody.

"It is the order and judgment of this court that Floyd Lee Poole be taken by the Sheriff of Crittenden county, Arkansas, and delivered to the Keeper or Superintendent of the Arkansas State Hospital for Nervous Diseases; the Superintendent of said institution is hereby directed to keep the defendant, Floyd Lee Poole, who is by this court found to be an insane criminal, securely confined in the proper ward of said institution from this date until the further order of this court."

Later in 1947, Dr. G. W. Jackson, then superintendent of the State Hospital, reported that the defendant was sane; so the defendant was returned to the Crittenden Circuit Court, and on September 23, 1947, he was placed on trial on the original information filed on July

19, 1945, as heretofore mentioned. At that trial—from which comes this appeal—the defense was insanity. The trial court first admitted in evidence on behalf of the defendant the 1946 and 1947 orders; but at the conclusion of the evidence, and after the defendant had rested his case, the court excluded both of the said orders. This appears in the record:

"The Court: Gentlemen of the jury, during the progress of the trial of this case an order dated the 18th of February, 1946, made by Judge Killough, committing the defendant to the Hospital for Nervous Diseases, and an order made by this court on the 13th day of January, 1947, committing the defendant to the State Hospital for Nervous Diseases, was admitted in evidence. It has now been determined that these two orders were not properly admitted in evidence before you, and you are told in arriving at your verdict in this case that you are not to consider these orders for any purpose."

The defendant duly excepted to the above ruling; and the exclusion of these orders is one of the points argued for reversal.

It is a rule of almost universal recognition that in criminal cases, when insanity is relied on as a defense, an adjudication declaring the defendant to be an insane person is competent to go to the jury as evidence on that issue. The adjudication may be prior to the alleged offense or reasonably subsequent to the alleged offense, for which the defendant is being tried. Such adjudication is not conclusive of the insanity of the defendant, but is admissible in evidence for consideration by the jury with all the other evidence bearing on the question of the defendant's insanity. Our own case of *McCully* v. *State*, 141 Ark. 450, 217 S. W. 453, is directly in point. In that case the defendant was being tried for incest, and offered an adjudication of the probate court committing the defendant to an insane asylum.* The trial court refused to admit the probate record in evidence,

---

* The original transcript on *McCully* v. *State* shows (1) that the indictment charged the offense to have been committed on January 15, 1918, and (2) that the defendant was committed to the asylum on July 14, 1918.

but this court reversed the trial court, and held that the record of commitment to an asylum was admissible on the issue of insanity. Mr. Justice Wood, speaking for this court, said:

"To determine the issue as to whether the appellant was insane at the time of the alleged commission of the offense, testimony tending to show the mental condition of the accused both before and after the commission of the act was competent. 1st McClain on Criminal Law, p. 136.

.    .    ..    .    .    .

"In criminal cases the record of inquisitions of lunacy or insanity is competent to go to the jury as evidence on that issue, but the weight of such evidence is for the jury."

Cases from other jurisdictions are in accord with our holding, that an adjudication of insanity is competent evidence to be offered upon the defendant's trial for the commission of a crime alleged to have been committed either prior or subsequent to the adjudication of insanity. Some such cases are: *Davidson* v. *Commonwealth,* 171 Ky. 488, 188 S. W. 631; *State* v. *McMurry,* 61 Kan. 87, 58 Pac. 961; *Wheeler* v. *State,* 34 Ohio St. 394, 32 Am. Rep. 372; *Hempton* v. *State,* 111 Wis. 127, 86 N. W. 596; *People* v. *Farrell,* 31 Cal. 576; *State* v. *Glindemann,* 34 Wash, 221, 75 Pac. 800, 101 A. S. R. 1001; *Bond* v. *State,* 129 Tenn. 75, 165 S. W. 229; and *Smedley* v. *Commonwealth,* 139 Ky. 767, 127 S. W. 485. See also 16 C. J. 558 and 23 C. J. S. 203, and annotations in 7 A. L. R. 568 and 68 A. L. R. 1390 on the topic, "Admissibility and probative force, on issue as to mental condition, of evidence that one had been adjudged incompetent or insane, or had been confined in insane asylum."

The excluded orders of the circuit court—as heretofore mentioned—had a direct bearing on the issue of the defendant's insanity. It was under the 1946 order that the defendant was confined in the State Hospital

752

under the provisions of § 9, *et seq.*, of Act 241 of 1943,[*] which provides that such an order of the circuit court is authority for the superintendent of the State Hospital to receive and hold a defendant until his restoration to sanity. The 1947 order directed the recommitment of the defendant because there was no showing that he had been restored to sanity. Certainly, these court orders made in 1946 and 1947 had a direct bearing on the question of the defendant's insanity and were admissible in evidence under the authorities previously cited.

Two contentions are urged against reversing this case because of the exclusion of these orders. We discuss these arguments.

1. It is claimed that the 1946 order was based on the report of Dr. A. C. Kolb, then superintendent of the State Hospital, and that the report itself was introduced in evidence, and that Dr. Kolb was a witness at the present trial, so—it is insisted—that there was no error in the court's refusal to admit the 1946 order based on Dr. Kolb's report. To that contention the answer is twofold: (a) The judgment shows that other matters were before the court in 1946 besides Dr. Kolb's report. One such matter was the statement in open court that the defendant had been examined by Dr. James R. Falls, who found the defendant to be *non compos mentis*. This statement in the 1946 order stands as a stipulation of what Dr. Falls' testimony would be; and Dr. Falls was not shown to be present at the trial from whence comes this appeal. (b) Furthermore, the court, when it made the 1946 order, was not bound to accept Dr. Kolb's report, even though substantiated by Dr. Falls' testimony. The 1946 order gave judicial approval to the report, and constituted an adjudication by the court that the defendant was then insane. Section 9 of Act 241 of 1943 provides for such an *adjudication* to be made as the basis for committing the defendant to the State Hospital. The adjudication is much stronger than the report of the superintendent and the testimony of witnesses; and the

* Sections 9 to 12, inclusive, of said Act 241 of 1943 are substantial reënactments of §§ 12555 to 12558, inclusive, Pope's Digest, which are taken from Act 174 of the Acts of 1893, and were construed by this court in *ex parte Baker*, 121 Ark. 537, 182 S. W. 279.

adjudication itself is what is admissible. In *McCully* v. *State, supra,* the circuit court, in refusing to admit the adjudication, said that the "best evidence is to bring in witnesses before the jury and let them testify as to his sanity or insanity." As previously stated, we reversed the trial court in the McCully case, and rejected the same argument as is here advanced. The 1947 order does not recite upon what evidence the court acted, but considerable factual matters are contained in the order, which recites—*inter alia*—that the defendant "is by this court found to be an insane criminal." So, certainly, the 1947 order, constituting an adjudication and recommitment to the State Hospital, was admissible in evidence for the reasons heretofore stated.

2. The second argument urged against the admissibility of the court orders of 1946 and 1947 is, that they were merely preliminary steps in the same case, and—as such—were only interlocutory orders and do not come within the general rule first stated herein. The answer to that argument is, that the 1946 and 1947 orders were adjudications of insanity, authorized and required to be made as the legal foundation for committing the defendant to the State Hospital. They were made under the authority of § 9, *et seq.,* of Act 241 of 1943, and were as final as any adjudication of insanity. In *Carson* v. *State,* 198 Ark. 112, 128 S. W. 2d 373, the defendant was determined to be insane and was committed to the State Hospital; and later, upon restoration to sanity, was returned for trial. That is exactly the procedure here followed. A well-considered case on the question here at issue, and involving facts somewhat similar to those in the case at bar, is that of *Bond* v. *State,* 129 Tenn. 75, 165 S. W. 229. Bond was indicted in January, 1909, for obtaining money under false pretenses, the offense alleged to have been committed in November, 1908. In November, 1909, he was adjudged insane. In 1910, he was arraigned on the indictment, but found insane and ordered committed to the hospital for the insane. Then in September, 1913, upon apparent restoration to sanity, he was tried on the original indictment. At this trial Bond's defense was continued insanity; and he sought

to introduce in evidence the adjudication of insanity made in 1909, and the commitment order of 1910. The trial court refused to admit the adjudication order and the commitment order; and the Supreme Court of Tennessee reversed the conviction because of such error by the trial court.

Another well-considered case on the point at issue, and involving a somewhat similar state of facts, is that of *Smedley* v. *Commonwealth,* 139 Ky. 767, 127 S. W. 485. Smedley was charged with embezzlement. After indictment, he was adjudged insane and committed to the asylum by the trial court, and his case continued. Later, the superintendent of the asylum certified that Smedley was sane, and he was then placed on trial on the original indictment. At his trial he sought to introduce in evidence the adjudication of insanity. The lower court ruled the adjudication to be inadmissible, but the Court of Appeals of Kentucky reversed the trial court, saying:

"We are further of the opinion that appellant's complaint of the exclusion by the court from the consideration of the jury of the record containing the writ, judgment, and other proceedings in the inquisition of lunacy offered in evidence by appellant to show that he had properly been found and adjudged of unsound mind shortly before his trial is well founded, for the exclusion of this evidence was error.

"It appears that the inquest was held at the same term of the court at which appellant's trial under the indictment occurred, and that from the time of the inquest until within a few days of his trial he was confined in the lunatic asylum at Hopkinsville; his return to the custody of the jailer of McCracken county having been ordered by the court upon a written statement from the superintendent of the asylum that his mind had been restored. His principal defense was that he was of unsound mind at the time of committing the crime charged in the indictment, and much of the evidence introduced in his behalf tended to show that throughout his term of office as county clerk, and down to the time of the trial, he was greatly addicted to the use of morphine or

other drugs by which his mind was much impaired, if not destroyed. Thus it will be seen that the inquest of lunacy furnished an important link in the chain of evidence upon which rested his main defense.''

We conclude that the trial court in the case at bar erred in excluding the 1946 and 1947 orders from being considered by the jury, on the question of the insanity of the defendant. That such error was prejudicial is settled by our case of *McCully* v. *State, supra,* where—for a similar error—we reversed the judgment of the trial court and remanded the cause for a new trial; and such is our order in the present case.

GRIFFIN SMITH, Chief Justice, dissenting. Where the passion of lust that prompts rape exists, or if there is an absence of that moral sense of responsibility which supplies the social balance—in either extreme it is sometimes contended that baseness alone is proof of mental incapacity. It is therefore said of the criminal that when extenuation fails, and he becomes convinced that denial and explanation must fall under a compact factual structure, there is recourse to a plea called insanity. It is a defense wholly appropriate in meritorious instances; but at the same time it is one so habitually invoked that courts should not be impulsively swayed by that psychic philosophy which has for its foundation the flimsy premise that reprehensible conduct alone is its own proof that intent was lacking.

Poole's crime is considerably lower and more sorded than rape as the word is ordinarily applied. Hilda, his own daughter, was thirteen years of age just four months before the crime was perpetrated. It was not the father's first attempt. Whether entirely successful on previous occasions is a matter of conjecture, depending upon construction to be given Hilda's testimony and that of a physician who physically examined her. When the outrage occurred the night of April 13, 1945, Hilda lived with her parents in a cottage near the St. Francis Levee District's building in West Memphis. Shortly after nine o'clock the father, who had been drinking (but according to officers was not drunk) directed Hilda to go with

him. He took her by the arm and guided their course to a secluded spot approximately three hundred feet from the residence. . . . Mrs. Poole, near death from tuberculosis, heard her daughter screaming; and, suspecting ill treatment, telephoned for officers. Two arrived within ten minutes. They, also, heard the little girl crying and screaming. One of the men directed his flashlight to a break in the hedge. It is sufficient to say that the position of father and child as observed by the deputies, the absence of essential clothing covering either, and information gained by Holland and Burrow as they observed the unspeakable transaction, were enough to convince the jury even if the transaction had been denied; but it was not.

Hilda testified that she had been beaten, threatened with death, and in other respects intimidated. She also testified that later, in Mississippi, and again in Kansas City, the same course of conduct was pursued after the law's protection had failed. A more pathetic story is seldom heard.

The judgment is reversed because, as the majority believes, prejudice resulted when admissible evidence was excluded from the jury. As a matter of fact the *evidence* was not excluded.

The adjudication of February 18, 1946, affirmatively discloses that the judgment rested upon a report by Dr. A. C. Kolb, then Superintendent of Arkansas State Hospital, and the statement of Poole's attorney, who said Dr. James R. Falls had examined the defendant. It was the belief of the Superintendent and Dr. Falls that Poole was then *non compos mentis,* and had been at the time the rape occurred. The attorney's statement was, of course, nothing but hearsay. Dr. Kolb's report was official.

It subsequently developed that Poole was not insane. Witnesses who observed him and who had done business with him did not in any respect discount his mentality.

757 .

In the meantime, between the February, 1946, judgment and trial in September, 1947, Poole remained in State Hospital but a short time.

Mrs. Poole, emaciated and virtually helpless when Hilda's pleading cries prompted the call for help in April, 1945, had died. The unnatural father's explanations to Hilda when he returned to Mississippi and before the motherless family moved to Missouri, was that it was "her fault—your fault that they put me in jail."

Dr. Kolb was succceded as Hospital Superintendent by Dr. G. W. Jackson. Both testified at the trial that resulted in Poole's conviction. Dr. Kolb was called by the defendant. His qualifications were readily admitted by Prosecuting Attorney James C. Hale. As the majority opinion discloses, Dr. Kolb's report upon which error is now predicated was before the jury, all details available for discussion; and it *was* discussed, commented upon, read from, and explained from every angle the defendant might have wished. But unfortunately for Poole, Dr. Kolb very frankly told the Court, when questioned by Judge Harrison, that in his opinion the defendant, when he raped Hilda, probably knew the nature and quality of the act he was doing, and may have known that it was wrong. Other witnesses were certain the accused was sane at the time of the act, and at trial. So a factual issue was presented and the jury found against Poole. The judgment is being reversed because, as it is said, the jury was erroneously instructed to disregard the adjudication of 1946.

The majority opinion cites *McCully* v. *State*, 141 Ark. 450, 217 S. W. 453, and says it is "directly in point." Perhaps so; but I do not see the point. In that case there had been an adjudication of insanity by the Probate Court, where by Art. VII, Sec. 34, of the Constitution, exclusive original jurisdiction in matters relative to persons of unsound mind and their estates is vested. But see Amendment No. 24 to the Constitution.

In the McCully opinion Mr. Justice Wood relied upon *Eagle* v. *Peterson*, 136 Ark. 72, 206 S. W. 55, 7 A. L. R.

553, where also the adjudication of insanity was by the Probate Court. Judge HART, who wrote the Eagle-Peterson opinion, declared the true rule to be that an adjudication of lunacy is not conclusive, but only *prima facie* evidence; and, he added, in criminal cases the record of inquisitions of lunacy or insanity is competent to go to the jury as evidence on that issue, but the weight of such evidence is for the jury.

In the case at bar the evidence went to the jury. There was no instruction that any part of Dr. Kolb's testimony be excluded. In it, (responding to the subpoena or call) he discussed every essential of the former report, told how he arrived at conclusions, what the weight of medical evidence was; and he told the jury how difficult it was for one to express in a written report the fine shade of meaning he was orally undertaking to convey. Nowhere in Judge Harrison's instruction did he tell the jury to disregard one word of Dr. Kolb's report. His reference was to court orders—one in 1946, and the other made as a preliminary in anticipation of the plea of insanity.

Every element upon which Judge Killough's judgment was based was before the jury, except the defendant's attorney's construction of what Dr. Falls said he had found, and would tell somebody else if asked.

Judge WOOD, in the McCully case, and Judge HART, in *Eagle* v. *Peterson*, characterized an adjudication of insanity as *prima facie* evidence to which the jury was entitled for what it was worth. In *St. Louis-San Francisco Railway Co.* v. *Cole,* 181 Ark. 780, 27 S. W. 2d 992, Mr. Justice MEHAFFY, in writing for a unanimous court, said that where by statute mere proof that an injury was caused by the operation of a train, there was a presumption of negligence, yet nevertheless this presumption disappeared when evidence in contradition was introduced. See, also, *Missouri Pacific Railroad Company* v. *Beard, Adm'r.,* 198 Ark. 346, 128 S. W. 2d 697. *Prima Facie* evidence creates merely a temporary inference of fact that vanishes when in conflict with reality. *Western & A. R. R. Co.* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884.

The whole effect of Judge Harrison's instruction was that the adjudication of 1946 and the fact that the defendant had later been sent to State Hospital for observation, were not to be regarded by the jury as officially binding orders. Had the defendant's counsel experienced surprise at Dr. Kolb's reply to the Court's direct question, counsel had the right to say so and to treat Dr. Kolb as a hostile witness, calling for the report for use in cross-examination and if necessary for impeachment purposes. Nothing of the kind was done, or hinted at.

Even if it should be conceded that by strictest rules of procedure the orders were admissible, it would still place too great a stress upon one's imagination to say that in the case at bar Poole's constitutional or statutory rights were prejudiced by a verbal exclusion of things that in effect had merged with something else, and the substituted facts were at hand.