Mo. Pac. R. R. Co. *v.* Vaughan, Admr.

5-755                                                286 S. W. 2d 6

Opinion delivered January 23, 1956.

*Pat Mehaffy, Herschel H. Friday, Jr.,* for appellant.

*J. E. Lightle, Jr.,* for appellee.

Ed. F. McFaddin, Associate Justice.    Appellee, as administrator of the estate of J. C. Caruth, claimed that his intestate was negligently killed by a train of appellant. From a verdict and judgment for appellee, there is this appeal.

I. *Sufficiency Of The Evidence.* Appellant most vigorously insists that there was no substantial evidence to sustain the verdict; and this point requires a review of the testimony.   On the afternoon of April 19, 1953 the deceased, J. C. Caruth, was sitting on the edge of a cross tie on the main line track of the Missouri Pacific Railroad at a place north of Bald Knob in White County.   He was struck and killed by a southbound train.   The contention of the appellee was that if the trainmen had kept a lookout as required by law (§ 73-1002 Ark. Stats.),

they could have discovered Caruth's peril in time to have stopped the train without striking him[1].

The appellant's contention was that the trainmen did keep a proper and legal lookout, but that it was too late to stop the train when Caruth's peril was discovered and that it was discovered as soon as possible. A considerable portion of the testimony related to: (a) the straightness and levelness of the track for a considerable distance north from Caruth's position of peril; (b) the distance from Caruth at which the engineer and fireman could have discovered him on the track; and (c) the distance required to have stopped the train after Caruth's position of peril could have been discovered. The appellant introduced evidence that it was impossible for the train operators to have discovered Caruth at a distance greater than 1,320 feet; that it required 2,640 feet to stop the train; and that the train did in fact stop in said last mentioned distance.

But in testing on appeal the sufficiency of the evidence to take a case to the Jury, or to support the verdict rendered, it is our duty to examine the evidence in the light most favorable to the verdict[2]; and when so viewing the evidence in the case at bar, we find that the witnesses for appellee made a case for the Jury. Henry Varnell, City Marshal of Bald Knob, testified that by actual test he was able to state that at a distance of 6-10ths of a mile (i. e. 3,168 feet) to the north he could see a man seated on the track at the place where Caruth was seated; that standing in the middle of the railroad track and looking south he could, with his naked eye, see a man seated on a cross tie (as Caruth was) a distance of 3,100 feet down the track; and that the engineer in the locomotive would be elevated a few feet higher than a man merely standing. Other witnesses testified to visibility of 6-10ths of a mile (i. e. 3,168 feet); and it was shown that

[1] Some of our cases on discovered peril as applied to the Lookout Statute are: *Mo. Pac. R. Co.* v. *Coca-Cola Bottling Co.*, 154 Ark. 413, 242 S. W. 813; *Mo. Pac. R. Co.* v. *Manion*, 196 Ark. 981, 120 S. W. 2d 715; *Mo. Pac. R. Co.* v. *Taylor*, 200 Ark. 1, 137 S. W. 2d 747; and *St. L. S. F. Ry.* v. *Beasley*, 205 Ark. 688, 170 S. W. 2d 667.

[2] See *Ark. P. & L.* v. *Connelly*, 185 Ark. 693, 49 S. W. 2d 387; and *Albert* v. *Morris*, 208 Ark. 808, 187 S. W. 2d 909, and cases there cited.

at the time Caruth was killed it was a sunny day and there was nothing to obstruct the vision of the train operators for 6-10ths of a mile from the place where Caruth was seated.

The witness, Fletcher Caruth, testified: that he had worked for both the Rock Island and the Missouri Pacific Railroads as a porter and as a brakeman; that he had worked on passenger as well as freight trains, and on diesel as well as steam trains; that he knew the distance required to stop a diesel train; that he had worked as porter on the Missouri Pacific train from Poplar Bluff to Texarkana and knew the particular portion of the Missouri Pacific track where J. C. Caruth was struck by the train. After having been thus qualified the Court permitted the witness to testify that a diesel train with ten passenger and mail cars (as was the train that struck Caruth) proceeding south toward Bald Knob at 60 miles per hour on the track in question could stop within 1,200 to 1,500 feet from the point at which the train was when the brakes were applied. Fletcher Caruth also testified that at 75 miles per hour it would require something like ¼ of a mile (or 1,320 feet) to stop the train after the brakes were set, if the brakes were in good condition; and on cross-examination the witness said he did not think it would require as much as 2,800 feet distance to stop the train after the brakes were set.

It is argued that Fletcher Caruth did not know what he was talking about; but his credibility was for the jury. His testimony, if believed, was sufficient, along with all the other evidence, to take the case to the Jury on the questions of (a) whether a proper lookout was kept; (b) whether the engineer and fireman exercised due care; and (c) whether the brakes were in proper condition. We do not detail all the evidence because the foregoing covers the challenged issue. We conclude that the testimony was sufficient to take the case to the Jury on the point here concerned.

I. *Erroneous Instruction.* At the request of the plaintiff, and over defendant's general and special ex-

ceptions, the Court gave the following instruction to the Jury:

"You are instructed that if you find from a preponderance of the evidence in this case that the deceased, Joseph C. Caruth, was injured and killed by the operation of one of the trains of the defendant company, as alleged in the complaint, then you are told and instructed by the Court that the law presumes negligence on the part of the defendant company, and it will be your duty and you are instructed to find for the plaintiff, unless the defendant has overcome that presumption by a preponderance of the evidence in this case."

The appellee seeks to defend the above instruction by citing such cases as *St. L. S. W. Ry. Co.* v. *Vaughan*, 180 Ark. 559, 21 S. W. 2d 971; *Mo. Pac. R. Co.* v. *Overton*, 194 Ark. 754, 109 S. W. 2d 435; and *Mo. Pac. R. Co.* v. *Thompson*, 195 Ark. 665, 113 S. W. 2d 720. It is true that in some of these cases an instruction like the one here involved was sustained; but our later cases (necessitated by the decision of the U. S. Supreme Court in *Western & Atlantic R.* v. *Henderson*, 279 U. S. 639, 73 L. Ed. 884, 49 S. Ct. 445) have held fatally defective an instruction like the one here involved. Some of our later cases holding the instruction fatally defective are: *Mo. Pac. R. Co.* v. *Beard*, 198 Ark. 346, 128 S. W. 2d 697; *Mo. Pac. R. Co.* v. *Ross*,[3] 199 Ark. 182, 133 S. W. 2d 29; *St. L. S. F. Ry.* v. *Mangum*, 199 Ark. 767, 136 S. W. 2d 158; and *St. L. S. F. Ry.* v. *Hovley* (opinion on re-hearing), 199 Ark. 853, 137 S. W. 2d 231.

In *Mo. Pac. R. Co.* v. *Beard* (*supra*) this Court, speaking through Chief Justice Griffin Smith, said that the questioned instruction (there as here) made the presumption continuing evidence like the Georgia cases, rather than ". . . a mere temporary inference of fact that vanished upon the introduction of opposing evi-

---

[3] It is interesting to note that this Ross case was reversed because of the giving of an instruction like the one here involved, and that on second trial in the Circuit Court the defective instruction was omitted and the judgment for the plaintiff was affirmed by this Court, as reported in 150 S. W. 2d 211, as noted in 202 Ark. 1197.

dence," like the Mississippi cases; and Chief Justice Griffin Smith said:

"The instruction in the case at bar told the Jury, without qualification or reservation, to find for the plaintiff unless the defendants had overcome the legal presumption of negligence by a preponderance of the evidence."

The instruction in the case at bar uses the same fatal language as that contained in *Mo. Pac.* v. *Beard* (*supra*). Our cases reported after the Beard case, and cited above, have all held fatally defective an instruction like the one here.

Other questions raised need not be discussed because they may not occur on retrial. The judgment is reversed because of the instruction heretofore quoted.

Reversed and remanded.

Mr. Justice MILLWEE dissents as to reversal.