BANDINI PETROLEUM CO. ET AL. *v.* SUPERIOR COURT, LOS ANGELES COUNTY, CALIFORNIA, ET AL.

No. 43. Argued October 13, 14, 1931.—Decided November 23, 1931

*Mr. Robert B. Murphey,* with whom *Mr. Asa V. Call* was on the brief, for appellants.

Mr. *James S. Bennett,* with whom Mr. *U. S. Webb,* Attorney General of California, was on the brief, for appellees.

Mr. Chief Justice Hughes delivered the opinion of the Court.

The appellants are producers of oil and gas from their respective wells in the Santa Fe Springs oil field in Los Angeles County, California. In September, 1929, the State, acting through its Director of Natural Resources, brought suit in the Superior Court of the State against the appellants and others, seeking to enjoin an alleged unreasonable waste of natural gas in that field. The authority for the suit was found in §§ 8b and 14b of what is called the Oil and Gas Conservation Act of California. Stats. Cal. 1915, c. 718; 1917, c. 759; 1919, c. 536; 1921, c. 912; 1929, c. 535. Section 8b prohibits "the unreasonable waste of natural gas," and § 14b authorizes suit by the Director of Natural Resources to enforce the prohibition.[1]

---

[1] These sections are as follows:

"Sec. 8b. The unreasonable waste of natural gas by the act, omission, sufferance or insistence of the lessor, lessee or operator of any land containing oil or gas, or both, whether before or after the removal of gasoline from such natural gas, is hereby declared to be opposed to

The Superior Court granted a preliminary injunction after a hearing upon the pleadings, affidavits, oral testimony and documents submitted. The court recited in its order that there appeared to be an unreasonable waste of natural gas in the Santa Fe Springs oil field, and that an injunction was necessary in order "to preserve the subject matter of the action to abide the decree of the court at the conclusion of the trial." The court restricted the average daily production of "net formation gas" from "any lease or other property unit" to the amount shown for each operator in an accompanying schedule.[2]

---

the public interest and is hereby prohibited and declared to be unlawful. The blowing, release or escape of natural gas into the air shall be prima facie evidence of unreasonable waste." (Stats. Cal. 1929, ch. 535, p. 927.)

"Sec. 14b. Whenever it appears to the director of the department of natural resources that the owners, lessors, lessees, or operators of any well or wells producing oil and gas or oil or gas are causing or permitting an unreasonable waste of gas, he may institute, or have proceedings instituted, in the name of the people of the State of California to enjoin such unreasonable waste of gas regardless of whether proceedings have or have not been instituted under section 8 hereof, and regardless of whether an order has or has not been made therein. Such proceedings shall be instituted in the superior court for the county in which the well or wells from which the unreasonable waste of gas is occurring or any thereof are situated. The owners, lessors, lessees or operators causing or permitting an unreasonable waste of gas in the same oil or gas field, although their properties and interests may be separately owned and their unreasonable waste separate and distinct, may be made parties to said action. In such suits no restraining order shall be issued *ex parte,* but otherwise the procedure shall be governed by the provisions of chapter three, title seven, part two of the Code of Civil Procedure of the State of California and no temporary or permanent injunction issued in such proceedings shall be refused or dissolved or stayed pending appeal upon the giving of any bond or undertaking, or otherwise." (Stats. Cal. 1929, ch. 535, p. 930.)

[2] The injunction order sets forth "that the evidence available to the Court at this time shows that the unreasonable waste of natural gas

The court also directed each defendant to file reports showing the daily production of gas and oil, and the order was without prejudice to the right of any of the parties to move on five days' notice for modification of the injunction. The court later modified the order in particulars not important here. Appellants state that the order curtailed their production of gas from 57,120,000 to 27,-187,000 cubic feet a day.

---

in said field may be substantially reduced and that the equities of all parties may be fairly conserved by a preliminary injunction which will limit the waste of gas by restricting the production thereof to a quantity reasonably in excess of the present outlets for beneficial use above ground, require the extraction of gasoline from the gas produced in the field; that accordingly for the purposes of this order, the total gas outlets for all uses with a reasonable tolerance to take care of fluctuating demands and the necessary waste is taken at approximately two hundred eighty-five million (285,000,000) cubic feet of gas each day, and the estimated potential production of oil is taken at two hundred thirty-seven thousand five hundred seventy-six (237,576) barrels each day distributed among leases and other operating property units, as shown in the schedule hereafter set out; and that sufficient cause has been shown for the extraordinary relief of a preliminary injunction pending the trial of the action on the merits, and the entry of a final judgment herein;

" It Is Ordered and Decreed that the above named defendants . . . be and they hereby are restrained and enjoined . . . until the further order of this court as follows:

" 1. From blowing, releasing or permitting any natural gas to escape into the air from any well or wells in the Santa Fe Springs Oil Field before the removal of the gasoline from such natural gas.

" 2. From operating any well producing natural gas in the Santa Fe Springs Oil Field except while exercising a high degree of care in the selection and adjustment of appliances and in the use thereof for the purpose of keeping each producing well in its ' optimum gas-oil ratio '—the term ' optimum gas-oil ratio ' being defined as the smallest number of cubic feet of gas which can be produced with each barrel of oil from the same well at the same time.

" 3. From producing more net formation gas on the average day of each seven (7) day period from any lease or other property unit than is set forth in the ' Allowed Gas Production ' column " than that shown for each operator in the accompanying schedule.

Thereupon the appellants sought a writ of prohibition from the District Court of Appeal, Second Appellate District of the State, restraining the Superior Court and the respondent, William Hazlett, as one of its judges, from enforcing the injunction order. The jurisdiction of the Superior Court was attacked upon the ground of the invalidity of the statute invoked. The appellants contended, in substance, that the statute violated the due process clause of the Fourteenth Amendment in that it afforded no certain or definite standard as to what constituted "waste" or "unreasonable waste" and unlawfully delegated power to the Superior Court to legislate upon that subject; in that, upon the facts and as applied against the appellants, the statute prohibited them "from utilizing such amount of natural gas produced from their respective wells" as was "reasonably necessary to produce oil therefrom in quantities not exceeding a reasonable proportion to the amount of oil produced from the same well"; and in that the statute required appellants to curtail their production of oil and gas "for the purpose of conserving such natural gas for the benefit of the general public" without eminent domain proceedings and without just compensation, and was so arbitrary and oppressive that it was in excess of the power of the State. By reference to their pleadings in the injunction suit, the appellants also assailed, under the due process clause, the provision of the statute as to what should constitute *prima facie* evidence of unreasonable waste, and the appellants further insisted that the statute as enforced against them impaired the obligation of their lease contracts in violation of the contract clause of the Federal Constitution and that they were denied the equal protection of the laws as guaranteed by the Fourteenth Amendment.

The respondents (appellees here) demurred to the petition, and the District Court of Appeals, entertaining and overruling the contentions of the appellants under the

due process clause, denied the writ of prohibition.    63 Cal. App. Dec. 1175, 293 Pac. 899.   The appellants then applied for a hearing in the Supreme Court of the State and, this having been denied, they seek in this Court a review of the judgment of the District Court of Appeal.

This Court has jurisdiction.   The proceeding for a writ of prohibition is a distinct suit and the judgment finally disposing of it is a final judgment within the meaning of § 237 (a) of the Judicial Code.   U. S. C., Tit. 28, § 344. *Weston* v. *Charleston,* 2 Pet. 449, 464; *Mt. Vernon Cotton Co.* v. *Alabama Power Co.,* 240 U. S. 30, 31; *Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor,* 266 U. S. 200, 206; *Michigan Central R. Co.* v. *Mix,* 278 U. S. 492, 494. That judgment, however, merely dealt with the jurisdiction of the Superior Court of the suit for injunction, and the only question before us is whether the District Court of Appeal erred in deciding the federal questions as to the validity of the statute upon which that jurisdiction was based.   Moreover, with all questions of fact, or with questions of law which would appropriately be raised upon the facts adduced in the trial of the case in the Superior Court, as a court competent to entertain the suit, we are not concerned on this appeal.   The appellants annexed to their petition in the prohibition proceeding, and made a part of it, the pleadings in the injunction suit and the affidavits presented upon the hearing of the application for preliminary injunction.   But they could not in that manner, or by their characterization of the evidence thus adduced, or by pleading the conclusions derived therefrom, substitute the District Court of Appeal for the Superior Court in the determination of the facts, or of the law as addressed to the facts, which should properly be considered by the latter tribunal.   It appears that in California, in accordance with the general conception of the province of the writ, prohibition is for the purpose of arresting the proceedings of any tribunal exercising ju-

dicial functions when such proceedings are without, or in excess of, jurisdiction. Cal. Code of Civ. Pro., §§ 1102, 1103; *Jacobsen* v. *Superior Court,* 192 Cal. 319; 219 Pac. 986. See also, *Baar* v. *Smith,* 201 Cal. 87, 101; 255 Pac. 827, 833. The writ of prohibition is not available as a substitute for an appeal from a court having jurisdiction. As was said by the Supreme Court of California, in *Truck Owners & Shippers, Inc.,* v. *Superior Court,* 194 Cal. 146, 155; 228 Pac. 19, 22, 23: "If the superior court has jurisdiction to entertain the action it has the power to define the right sought to be protected. . . . If the judgment of the superior court be incorrect, it may be reversed on appeal, but not on prohibition."

After the decision of the District Court of Appeal, and before the denial by the Supreme Court of the State of a hearing in the instant case, the latter court passed upon the constitutional validity of the statute in question. That decision was made upon an application for a writ of *supersedeas* pending an appeal by certain co-defendants of the appellants here (who were not parties to the appeal) from the above mentioned injunction order. *People ex rel. Stevenot, Director of Natural Resources,* v. *Associated Oil Co.,* 80 Cal. Dec. 607; 294 Pac. 717. The Supreme Court found no reason to interfere with the action of the Superior Court, and, later, the Supreme Court, on that appeal, affirmed the injunction order, holding that under the statute the Superior Court had the power to determine what wastage of gas in the production of oil was unreasonable. *id.* 81 Cal. Dec. 468, 471; 297 Pac. 536, 537. The District Court of Appeal, in the instant case, had expressed the same opinion and accordingly decided that it could not interfere by writ of prohibition. 63 Cal. App. Dec. at p. 1186; 293 Pac. at p. 907. It follows that, in considering and deciding federal questions in the prohibition proceeding, the District Court of Appeal must be regarded, as its opinion imports, as

having determined merely that the statute was valid upon its face so that the Superior Court had jurisdiction to entertain the injunction suit.   It is that determination alone that we can now consider.

The District Court of Appeal overruled the contention that the statute was so uncertain and devoid of any definition of a standard of conduct as to be inconsistent with due process.   The Supreme Court of the State, reaching the same conclusion (in the opinion above cited, 80 Cal. Dec. at pp. 614, 615; 294 Pac. at p. 724) described the general condition in which oil and gas were found in California and the standard which the court considered to be established by the statute.   After observing that courts were entitled to take judicial notice of the condition and development of the petroleum industry, and of matters of science and common knowledge, and referring to scientific reports, the Supreme Court said:

"For present purposes it need only be noted that oil in this state is found under layers of rock in a sand or sandstone formation termed a lentille or 'lentil,' under pressure caused by the presence of natural gas within the formation.   The layers of rock thus form a gas-tight dome or cover for the oil reserve.   The oil adheres in the interstices between the sand particles.   The natural gas may be in a free state at the top of the dome, but is also in solution with the oil, thus increasing the fluidity of the oil and the ease with which the oil is lifted with the gas in solution when the pressure on the gas is released by drilling into the oil 'sand.'   It is estimated that only from ten to twenty-five per cent. of the total amount of oil deposited in a reservoir is ultimately recovered, depending on the natural characteristics of the reservoir and the methods employed in utilizing the lifting power of the gas.   The importance of gas in the oil-producing industry has, therefore, become a question, of great concern to the industry itself and to government, to the end that its

function may be fully utilized without waste. It fairly
appears on this application that, depending on its location
in the oil reservoir, the extent of the oil ' sand,' the degree
of pressure within the formation, the amount of oil in the
' sand,' the amount of gas in solution with the oil, the
porosity of the ' sand ' and other considerations, each oil
and gas well has a best mean gas and oil ratio in the uti-
lization of the lifting power of the gas and the production
of the greatest quantity of oil in proportion to the amount
of gas so utilized, and which may be computed as to each
individual well to a reasonable degree of certainty and be
regulated accordingly."

In view of these circumstances, the Supreme Court con-
cluded that it might be said that there was an " unreason-
able waste " of gas where it " has been allowed to come
to the surface without its lifting power having been uti-
lized to produce the greatest quantity of oil in proportion."
It was such a waste of gas, the court said, that the legis-
lature of California intended to prohibit. In support of
this conclusion the court referred to the provisions of sec-
tion 8d of the statute.[3] These provisions showed, in the
opinion of the court, that the legislature had " plainly
adopted the standard so expressed," that is, " that gas

---

[3] Section 8d relates to the procedure upon complaint of undue
waste, and the portion quoted by the Supreme Court of the State
is as follows: " If it shall appear that gas is being produced from
any oil well or wells in quantities exceeding a reasonable proportion
to the amount of oil produced from the same well or wells, even
though it is shown that such excess gas is being used in the generation
of light, heat, power or other industrial purpose and that there is
sufficient other gas available for such uses from other wells in the
same or other fields in which the gas produced is not in excess of the
amount which bears a reasonable proportion to the amount of oil
produced from such other wells and that there are adequate gas-pipe-
line connections between such other wells and the place of utilization
of such gas the state oil and gas supervisor shall hold that such
excess production of gas is unreasonable waste thereof if such holding
will not cause an unreasonable waste of gas in any other field."

may not be produced, under existing conditions where the production thereof so greatly exceeds the market demand therefor, in quantities exceeding a reasonable proportion to the amount of oil produced." And, in explanation of its reasons for considering such a standard sufficiently definite, the court said that "because of the many and varying conditions peculiar to each reservoir and to each well, which will bear upon a determination of what is a reasonable proportion of gas to the amount of oil produced, it may be said that it would be impossible for the legislature to frame a measure based on ratios or percentages or definite proportions which would operate without discrimination, and that what is a reasonable proportion of gas to the amount of oil produced from each well or reservoir is a matter which may be ascertained to a fair degree of certainty in each individual case."

The statute is to be read with the construction placed upon it by the state court. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 73. And, so read, we find no ground for concluding that the statute should be regarded as invalid upon its face, merely by reason of uncertainty, so as to deprive the Superior Court of jurisdiction to consider the relevant questions of fact and to determine with respect to a particular field whether or not there has been the unreasonable waste of gas which the statute condemns. *Nash* v. *United States*, 229 U. S. 373, 377; *Miller* v. *Strahl*, 239 U. S. 426, 434; *Omaechevarria* v. *Idaho*, 246 U. S. 343, 348; *Hygrade Provision Co.* v. *Sherman*, 266 U. S. 497, 502.

The appellants make the further contention that the statute is invalid because of the provision of § 8b (*supra*, p. 10) that "the blowing, release or escape of natural gas into the air shall be *prima facie* evidence of unreasonable waste." The State, in the exercise of its general power

to prescribe rules of evidence, may provide that proof of a particular fact, or of several facts taken collectively, shall be *prima facie* evidence of another fact when there is some rational connection between the fact proved and the ultimate fact presumed. The legislative presumption is invalid when it is entirely arbitrary, or creates an invidious discrimination, or operates to deprive a party of a reasonable opportunity to present the pertinent facts in his defense. *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 43; *Bailey* v. *Alabama,* 219 U. S. 219, 238; *Lindsley* v. *Natural Carbonic Gas Co., supra,* at pp. 81, 82; *Manley* v. *Georgia,* 279 U. S. 1, 5, 6; *Western & Atlantic R. Co.* v. *Henderson,* 279 U. S. 639, 642. In the present case there is a manifest connection between the fact proved and the fact presumed, and under the construction placed upon the statute by the state court there appears to be no deprivation of a full opportunity to present all the facts relating to operations within the field.

The question remains whether the statutory scheme of regulation, with the standard which it sets up under the construction of the state court, is on its face beyond the power of the State. The District Court of Appeal, in the instant case, approached this question by considering the correlative rights, under the law of California, of surface owners in the same field. The court concluded that under the law of California " on account of the self-propelling or migratory character of natural gas, as well as oil," the owner of the surface did not have an absolute title to the gas and oil beneath, and could acquire such a title only when he had reduced these substances to possession. As justifying this opinion, the court cited the case of *Acme Oil Co.* v. *Williams* (140 Cal. 681; 74 Pac. 296) where the Supreme Court of the State had said, with respect to oil, that it is " of a fluctuating, uncertain, fugi-

tive nature, lies at unknown depths, and the quantity, extent and trend of its flow are uncertain. It requires but a small surface area, in what is known as an oil district, upon which to commence operations for its discovery. But when a well is developed the oil may be tributary to it for a long distance through the strata which hold it. This flow is not inexhaustible, no certain control over it can be exercised, and its actual possession can only be obtained, as against others in the same field, engaged in the same enterprise, by diligent and continuous pumping. It is the property of anybody who can acquire the surface right to bore for it, and when the flow is penetrated, he who operates his well most diligently obtains the greatest benefit, and this advantage is increased in proportion as his neighbor similarly situated neglects his opportunity." And the Supreme Court of the State, in its decision dealing with the statute in question, quoted this language and held that " the same rule would apply to natural gas." 80 Cal. at p. 612; 294 Pac. at p. 722.

It was with that understanding of the law of the State that the District Court of Appeal considered the statute, taken as a whole, as one regulating and adjusting the co-existing rights of the surface owners in the same field, and accordingly sustained the statute as a valid exercise of state power against the contentions under the due process clause. The court said: " It is the co-existence of these rights which authorizes the State to make use of its legislative power. When the rights of one impinge upon the rights of others the State may interpose for the purpose of adjusting and regulating the enjoyment of those rights." The District Court of Appeal apparently thought it doubtful whether the State might restrict or regulate the production of oil or gas " on the theory of the public's interest in their natural resources " but demed it unnecessary to

decide that question in the present case. That court explicitly refused to accept the view that the statute " does not proceed upon the theory of correlative rights, but only upon the policy of conserving or preserving the common supply." And, replying to the suggestion that the legislature was without authority to restrict the production of oil, the District Court of Appeal concluded its opinion with the statement that the record did not " indicate that the temporary injunction was founded upon such a theory. Nor are we determining that the Act attempts to confer upon the court any such power. Rather we are convinced that a proper construction of the enactment confines the authority within the limits of enjoining the production of gas when in excess of the reasonable proportion to the oil for the particular field involved, when not conveniently necessary for other than lifting purposes."

While this was the basis of the decision of the District Court of Appeal, the appellants insist that, in the subsequent decisions upon the appeal from the injunction order of the Superior Court, the Supreme Court of the State has taken a broader ground and has upheld the statute as one designed to protect the public interest in the conservation of natural resources. 80 Cal. at pp. 612–614; 294 Pac. at pp. 722, 723. We do not understand, however, that the Supreme Court in taking that view denied the operation of the statute as a safeguard of the co-existing rights of surface owners. On the contrary, the Supreme Court, in its second decision affirming the injunction order of the Superior Court, summed up its conclusions in these words (81 Cal. at p. 471; 297 Pac. at pp. 537, 538): " We reiterate that the legislation in question has lawfully vested in the Superior Court the power to determine what wastage of gas in the production of oil is reasonable or unreason-

able. Whether such wastage be reasonable or unreasonable is a question of fact and should be determined in view of the necessity of one land owner to make productive use of his parcel, in view of the equal right of the adjoining owners not to be deprived of correlative production from their parcels and in view of the right of the public to prevent the waste of that which cannot be replaced."

If the statute be viewed as one regulating the exercise of the correlative rights of surface owners with respect to a common source of supply of oil and gas, the conclusion that the statute is valid upon its face, that is, considered apart from any attempted application of it in administration which might violate constitutional right, is fully supported by the decisions of this Court. *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 210, 211; *Lindsley* v. *Natural Carbonic Gas Co., supra,* at p. 77; *Walls* v. *Midland Carbon Co.,* 254 U. S. 300, 323. In that aspect, the statute unquestionably has a valid operation, and it cannot be said that the Superior Court was without jurisdiction to entertain the suit in which the injunction order was granted. That was all that the District Court of Appeal determined in the judgment now under review. It is not necessary to go further and to deal with contentions not suitably raised by the record before us. Constitutional questions are not to be dealt with abstractly. Having jurisdiction of the suit the Superior Court had authority to take steps to protect the subject matter of the action pending the trial on the merits. The injunction order stated that to be its purpose. Upon the trial, all questions of fact and of law relevant to the application and enforcement of the statute may be raised and every constitutional right which these appellants may have in any aspect of the case as finally developed may be appropriately asserted and determined in due course of procedure.

*Judgment affirmed.*