**R. D. THOMPSON, Petitioner,**

v.

**R. L. TURNER, Warden, Central Prison, Raleigh, N. C., Respondent.**

**Civ. No. 1998.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 28, 1967.

R. D. Thompson, pro se.

Thomas Wade Bruton, Atty. Gen. of N. C., by Theodore C. Brown, Jr., Staff Atty., Raleigh, N. C., for respondent.

## OPINION and ORDER

LARKINS, District Judge:

### SUMMARY

This cause comes before the Court as an application for a writ of habeas corpus by a state prisoner pursuant to 28 U.S.C.A. § 2254. Issues have been joined by respondent's answer and motion to dismiss.

Petitioner alleges that he is being held in custody in state prison in violation of the Constitution of the United States in the following particulars:

(a) defective indictments;

(b) counsel was not promptly appointed;

(c) double jeopardy;

(d) ineffective and inadequate representation by court-appointed counsel;

(e) the solicitor "knowingly and willingly used perjured testimony against me";

(f) denial of relief in state courts;

(g) he was tried and convicted " * * * for violation of G.S. 14–177, which is an unconstitutional statute and therefore the court tried him when it did not have lawful jurisdiction to do so."

Petitioner was arrested on May 4, 1966 on a warrant issued from Robeson County Recorder's Court, charging him with raping and engaging in an unnatural sex act with a ten-year-old child. Probable cause was found in a preliminary hearing held on May 9, 1966, and the case was transferred to the Superior Court of Robeson County. At the June 1966 Term of that court, two true bills of indictment were returned against petitioner by the grand jury. Number 19069 charged petitioner with committing " * * * the abominable and detestable crime against nature with one Shelby Jean Hatchell, she being a female child under twelve years of age, against the form of the statute in such case made and provided and against the peace and dignity of the State." In indictment

number 19069–A, petitioner was charged with raping the same child.

On June 6, 1966, the same day that the grand jury convened, petitioner filed an affidavit of indigency, and the presiding judge appointed John W. Campbell, Esquire, a member of the local bar, to represent petitioner on both charges. The following week, a jury was empaneled, and upon a plea of not guilty to both charges, the jury found the petitioner guilty of a crime against nature on the first, but on the charge of rape found petitioner guilty of the lesser-included offense of assault upon a female with the intent to commit rape. Upon the verdict, judgment was entered that petitioner serve not less than eighteen nor more than twenty years for crime against nature, and not less than five nor more than seven years for assault upon a female with intent to commit rape, the two sentences to run consecutively.

Petitioner did not appeal his convictions, but twenty days after his commitment to prison filed a supoena duces tecum in forma pauperis for the court papers in his case, and certified copies thereof were sent to him in September 1966. Petitioner applied to the Supreme Court of North Carolina for a writ of certiorari to review his convictions, which was allowed at the 1966 Fall Term. The Supreme Court, citing its own prior authority in State v. Blackmon, 260 N.C. 352, 132 S.E.2d 880 (1963), held that where a statute prescribes punishment "by fine or imprisonment in the State's prison, or both, in the discretion of the court", it is not a "specific punishment," within the meaning of that term as used in G.S. § 14–2, and that a person who is convicted of any felony "for which no specific punishment is prescribed by statute" may not be sentenced for a term of imprisonment longer than ten years. Accordingly, the sentence imposed in number 19069 for crime against nature to a term of 18 to 20 years was held improper and was vacated, and the cause was remanded to the Superior Court of Robeson County for resentencing, with instructions that petitioner be given credit for the time served under the vacated judgment. Petitioner did not attack the judgment in 19069–A for rape. The mandate of the Supreme Court was filed November 2, 1966, in State v. Thompson, 268 N.C. 447, 150 S.E.2d 781.

Meanwhile, petitioner had filed a petition for a post-conviction hearing in the Superior Court of Robeson County in October 1966, but the records do not indicate whether action has been taken upon it. In December 1966, petitioner filed a petition for a writ of mandamus in the Supreme Court of North Carolina, complaining that he had not been resentenced on the crime against nature charge pursuant to the Court's mandate, and that no action had been taken upon his petition for a post-conviction hearing. The petition for a writ of mandamus was denied in conference by the Supreme Court on February 6, 1967, petitioner having been re-sentenced in the meantime at the regularly scheduled January Session of the Superior Court of Robeson County to a term of 10 years upon the charge of crime against nature. The commitment paper attached to the Attorney General's return in the present action indicates that petitioner has been given credit for the nine months and three days which he served under the vacated judgment. In February 1967, petitioner filed a petition for a writ of habeas corpus in Wake County Superior Court, attacking the constitutionality of G.S. § 14–177, which was dismissed on March 15, 1967, as being improperly presented. Four days later, petitioner filed in this Court pursuant to 28 U.S.C.A. § 2254, no action having been taken upon his petition in Robeson County.

CONCLUSIONS OF LAW

The two indictments upon which petitioner was tried are regular on their face and sufficiently allege the crimes charged in each instance. Petitioner's attempted attack upon them is meritless. Similarly, there is no substance to petitioner's claim that he was twice put in jeopardy for the same offense merely because one of the indictments was numbered 19069 and the other was numbered 19069–A.

The numbers assigned to bills of indictment are merely the result of the practical necessity of maintaining an orderly records filing system, to the end that interested persons, such as petitioner, may promptly obtain copies when needed. The contents of the indictments, and not the administrative number assigned to them, allege the offenses charged in each. Petitioner is further misinformed that the numbers have anything to do with the sentences imposed upon a conviction of the offenses charged therein.

■ Petitioner does not allege that any statement made by him during the period elapsing between arrest and trial, however obtained, was used against him at his trial. No plea to the charges was made by or on behalf of him until the state had first provided counsel for him. There are no allegations to the effect that he requested counsel, or that he was not warned of his constitutional right to remain silent or that any statement which may have been obtained during the alleged interrogation was actually used against him at the trial of his case. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), held that where a suspect has been refused an opportunity to consult with counsel and has not been warned of his constitutional right to remain silent, he has been denied the assistance of counsel in violation of the Sixth and Fourteenth Amendments, and no statement extracted by the police during the interrogation may be used against him at a trial. Petitioner's allegations in respect to his not having counsel following his arrest are lacking in substance and fail to state a claim for relief, and his attempt to bring himself within the ambit of the exclusionary rule of evidence set forth in *Escobedo* is unavailing.

■ In allegation (d), petitioner claims that a police officer gave perjured testimony against him to his prejudice: " * * * that he lyingly testified that he knew me, that I was mean and he was afraid of me." Unable to obtain the transcript of the trial, the Court nevertheless concludes that this contention is not worthy of belief. Such a statement, if falsely made, as petitioner claims, may or may not have prejudiced petitioner in the mind of the presiding judge as he imposed sentence. If in fact petitioner is not "mean" and the judge imposed a longer sentence on the sole ground that he believed that petitioner was "mean," the statement may have been judicial. However, "meanness" is a matter of personal opinion, and it is not surprising that petitioner's estimate of the nature of his own character would differ from that of a police officer who knew or knew of him, his reputation, and the nature of the crimes he had committed. The nature of a man's character and his criminal reputation would seem to be proper factors for a judge to consider in imposing sentence for a brutal and reprehensible crime. The records show that the witness in question, Officer Hubert Stone, swore out the warrant upon which petitioner was arrested; hence, it is reasonable to believe that Officer Stone did know the petitioner. If Officer Stone was of the opinion that petitioner was "mean," an opinion which is not unsupported by the evidence in the trial, due process has not been offended by the fact the solicitor brought this fact out in the sentence hearing. Furthermore, "fear" being a state of mind, it would indeed be difficult to dispute Officer Stone's statement that he was afraid of petitioner. There is nothing in the record to warrant a hearing on this point. The sentences which were imposed for the offenses of crime against nature and assault upon a female with intent to commit rape, committed upon a ten-year old child, being ten and five years, respectively, are within the statutory maximum and are not excessive. The simple fact remains, that all of this leads the Court to dwell in the realm of speculation, and this Court will not be quick to presume that an officer of the law perjured himself under oath before the judge presiding at the sentence hearing.

■ Likewise, petitioner's assertion in allegation (c) that the court-appointed attorney, Honorable John W. Campbell,

did not summon the witnesses petitioner insisted he summon is without merit and of no avail in the light of the affidavit of the said attorney which denies the substance of the allegation.

Petitioner's final assertion is that the statute under which he was convicted for crime against nature, G.S. § 14–177, is constitutionally defective in that, "the language is so vague that not only would an intelligent engineer be confused as to what the statute prohibits, I am certain many attorneys of North Carolina cannot tell specifically everything encompassed by the statute as interpreted by the North Carolina State Supreme Court in the past. See: Perkins v. State of North Carolina, D.C., 234 F.Supp. 333 (1964) where the Court stated that the statute was definitely vague and unconstitutional. The Court went into detail as to the unconstitutional vagueness."

Petitioner is misinformed as to the holding of the Court in *Perkins* with respect to the constitutional validity of G.S. § 14–177. At page 336 of the written opinion, the precise holding of the Court on this point is as follows: "The obviously vague statute must be read as if it incorporates the judicial interpretations placed upon it by the Supreme Court of North Carolina, (citing Bandini Pet. Co. v. Superior Court, etc., 284 U.S. 8, 18; 52 S.Ct. 103, 76 L.Ed. 136 (1931); Winters v. People of State of New York, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948)), and with those interpretations added, it is not unconstitutionally vague. Furthermore, this Court is bound by the interpretations of the North Carolina Supreme Court * * *."

The evidence at petitioner's trial indicates that the offensive act in which he engaged with the ten-year old child was a crime against nature. The North Carolina Supreme Court has held that this conduct is encompassed and proscribed by G.S. § 14–177 as a crime against nature. Petitioner's final claim, then is of no avail.

The Court is of the opinion that the petitioner has not raised any issues determinable in a collateral proceeding which require the Court to grant a plenary hearing. All of the questions presented herein are adequately resolved by a review of the affidavit of his counsel and other records on file, which conclusively show that the allegations in the application are without substance in fact and foundation in law.

## ORDER

It is therefore ordered that the application for a writ of habeas corpus be, and the same is hereby denied.