**EMPIRE STATE RESTAURANT AND TAVERN ASSOCIATION, INC. and Buis, Inc. d/b/a Dodester's, Plaintiffs,**

v.

**NEW YORK STATE; New York State Department of Law; Eliot Spitzer, in His Official Capacity as Attorney General of the State of New York; New York State Department of Health; and Antonia C. Novello, in Her Official Capacity as Commissioner of the New York State Department of Health, Defendants.**

No. 1:03–CV–918 (LEK/DRH).

United States District Court, N.D. New York.

March 17, 2005.

Kevin T. Mulhearn, Office of Kevin T. Mulhearn, Orangeburg, NY, George H. Lowe, Bond, Schoeneck Law Firm, Syracuse, NY, for Plaintiffs.

Charles J. Quackenbush, New York State Attorney General, Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER [1]

KAHN, District Judge.

## I. Facts

On March 26, 2003, New York State enacted Chapter 13 of the Laws of 2003 ("Chapter 13"), amending the Clean Indoor Air Act, Chapter 244 of the Laws of 1989 ("CIAA"). Chapter 13 regulates smoking in various public places, including bars and food service establishments, and imposes civil penalties of no greater than two thousand dollars for those who violate its provisions. Those subject to Chapter 13 include: (1) any person or entity that controls the use of an area in which smoking is prohibited, (2) any employer whose place of employment is an area in which smoking is prohibited, and (3) any person who smokes in an area where smoking is prohibited. Enforcement of Chapter 13 is left to local county boards of health, officers designated by elected county legislatures or boards of supervisors, or, absent such boards of health or designated officers, the New York State Department of Health ("DOH"). Chapter 13 became effective on July 24, 2003.

Two days prior, on July 22, 2003, Plaintiffs Empire State Restaurant and Tavern Association ("ESRTA") [2] and several other owners of New York State taverns and bars [3] brought this action, asking the Court to declare Chapter 13 unconstitutional, and to permanently enjoin Defendants from enforcing Chapter 13, on the grounds that (1) Chapter 13 is preempted by the Occupational Safety and Health Act of 1970 ("OSH Act") and (2) Chapter 13 is unconstitutionally vague.[4] On October 21, 2003, the Court denied Plaintiffs' motion for a preliminary injunction. Currently before the Court are cross-motions for summary judgment.

## II. Discussion

### A. Sovereign Immunity

Defendants contend that the claims against all Defendants are barred by the Eleventh Amendment's grant of sovereign immunity.

■ It is well-settled that in the absence of consent, the Eleventh Amendment deprives a federal court of jurisdiction over a state or any of its agencies or departments. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This is true whether a plaintiff is bringing an action for monetary or injunctive relief. *See id.; see also Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Thus, all claims against the State of New York and its departments, the New York

---

1. For printed publication in the Federal Reporter.

2. ESRTA, which is comprised of restaurants, taverns, and related commercial establishments located in New York State, is a "New York Corporation organized to support and improve the business opportunities and environment for restaurants, taverns and related commercial establishments located in the State of New York." Complaint (Dkt. No. 1) at ¶¶ 5–6.

3. The only owner that remains in this action is Plaintiff Buies, Inc. d/b/a Dodester's.

4. Plaintiffs also make brief and conclusory references in their complaint to violations of various First Amendment rights. As Plaintiffs have not proceeded with these claims in their subsequent briefs or oral arguments, the Court will consider those claims abandoned.

State Department of Law and the New York State DOH, must be dismissed.

■ The Eleventh Amendment also bars suits against state officials when the state itself is the "real, substantial party in interest," *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900 (citing *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)), subject to one important exception. The Supreme Court in *Ex Parte Young* established that "a suit challenging the constitutionality of a state official's action is not one against the state." *Pennhurst*, 465 U.S. at 102, 104 S.Ct. 900 (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Defendants claim that because this is a facial challenge, rather than an as-applied challenge, to the constitutionality of a statute, this exception does not apply. This argument is without merit. That Defendants may not have acted yet with respect to these particular Plaintiffs is of no constitutional significance. The rationale behind *Ex Parte Young* is that any state authorization allowing a state official to act in contravention of federal law is a nullity, and thus, the official is stripped of his official or representative capacity and unable to avail himself of the cloak of sovereign immunity. *See Papasan v. Allain*, 478 U.S. 265, 276–77, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). As these remaining Defendants currently have state authorization to proceed with the enforcement of Chapter 13 [5], which is alleged to be in violation of federal constitutional law, they can be subject to the jurisdiction of this Court whether or not they have taken such action. *See, e.g., Mountain Water Co. v.*

*Montana Dep't of Pub. Serv. Reg.*, 919 F.2d 593, 596 (9th Cir.1990).

**B. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)).

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown*, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

---

5. *See, e.g.,* Public Health Law ("PHL") § 1399–t(5) ("[a]ny person aggrieved by the decision . . . may appeal to the commissioner to review such decision"); PHL § 1399–v ("[t]he commissioner may impose a civil penalty for a violation . . ."); PHL § 12(2) ("[t]he

penalty provided for . . . may be recovered by an action brought by the commissioner"); PHL § 12(5) ("[i]t shall be the duty of the attorney general upon the request of the commissioner to bring an action for an injunction against any person who violates . . .").

### 1. Preemption

■ The Supremacy Clause of the United States Constitution declares that "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, "state and local laws are preempted where they conflict with the dictates of federal law, and must yield to those dictates." *Ace Auto Body and Towing, Ltd. v. City of New York*, 171 F.3d 765, 771 (2d Cir.1999). "Preemption may be express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* (internal quotations omitted).

The United States Congress enacted the OSH Act of 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources ...." 29 U.S.C. § 651(b). To further that purpose, the Occupational Safety and Health Administration ("OSHA") was created within the Department of Labor to carry out the Secretary of Labor's obligation to promulgate and enforce national consensus standards regarding permissible safe exposure levels for employees in the workplace. *See* 29 U.S.C. § 655(a). The ability of the states to regulate in this area has been restricted by Congress, pursuant to 29 U.S.C. § 667(b), (c). However, 29 U.S.C. § 667(a) provides states with some authority in this area:

> State jurisdiction and plans. (a) Assertion of State standards in absence of applicable Federal standards. Nothing in this Act shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to

which no standard is in effect under [29 U.S.C. § 655]. 29 U.S.C. § 667(a). Thus, if there is no federal standard under the OSH Act, states are free to regulate for the public health, safety, and welfare.

■ The crux of Plaintiffs' argument is that 29 C.F.R.1910.100 ("1910.100"), which adopts standards relating to permissible safe exposure levels for employees exposed to "toxic and hazardous substances," constitutes a federal standard that preempts state legislation or regulation of occupational tobacco smoke. Plaintiffs' S.J. Memo. (Dkt. No. 42) at 26. They contend that this is an attempt by the federal government to occupy the field of regulation of environmental tobacco smoke and to regulate worker exposure to such smoke. *Id.* at 28. Defendants counter that 1910.100 does not include environmental tobacco smoke, and, therefore, there is no federal standard in place. Defendants' S.J. Memo. (Dkt. No. 39) at 7.

In support of their argument that this regulation includes environmental tobacco smoke, Plaintiffs assert that every component of environmental tobacco smoke, as well as that specific combination, is included in 1910.100. Plaintiffs' S.J. Memo. (Dkt. No. 42) at 26. They also note that in a 1998 letter, the Director of Compliance Programs of OSHA stated that "OSHA does attempt to regulate worker exposure to tobacco smoke by applying 29 C.F.R. 1910.100," but that the components of environmental tobacco smoke are generally below the Permissible Exposure Limits ("PEL") of 1910.100. Miles Letter (Dkt. No. 1, Ex. G).

Even assuming, *arguendo,* that each component of environmental tobacco smoke is contained in 1910.100, that does not lead to the conclusion that there is a standard in effect for the particular combination of contaminants that comprise the

same. Environmental tobacco smoke, a particularly harmful synergism of contaminants[6], is more than the mere sum of its parts. This is most clearly indicated by the fact that, although OHSA stated that the contaminants comprising environmental tobacco smoke rarely exceeded the PELs, the Secretary of Labor still considered it necessary to explore the possibility of establishing federal standards for the particular combination that is environmental tobacco smoke. *See* Miles Letter (Dkt. No. 1, Ex. G); *see also* Plaintiffs' S.J. Memo. (Dkt. No. 42) at 27.

Moreover, numerous statements by OSHA indicate its stance regarding the regulation of environmental tobacco smoke. For instance, in a March 30, 1990 letter, Gerard F. Scannell, Assistant Secretary, writes that "[c]urrently, OSHA has no regulation which specifically addresses tobacco smoke as a whole because it is such a complex mixture. OSHA does, however, have standards which limit employee exposure to several of the main chemical components found in tobacco smoke."[7] Also, on March 3, 1988, Roy Gibbs, Director of the Office of Science and Technology Assessment, wrote that OSHA "does not have a standard on worker exposure to cigarette smoke in the workplace," but that OSHA "does have an air contaminant standard, 29 CFR 1910.100, Table Z–1, for the components of cigarette smoke, such as nicotine and carbon monoxide."[8]

The explanation for the December 17, 2001 withdrawal of OSHA's proposal regarding environmental tobacco smoke is further support for the contention that environmental tobacco smoke is not regulated by 1910.100. *See* Indoor Air Quality in the Workplace, 66 Fed.Reg. 64946 (Dec. 17, 2001)[9]. In its explanation, OSHA stated that the reason that it formally declined to regulate environmental tobacco smoke was that many state and local governments already began to address this problem by curtailing smoking in public places and workplaces, not that OSHA already regulated it pursuant to 1910.100. *Id.* This official, formal statement by OSHA in 2001, marking its clear refusal to regulate environmental tobacco smoke, is more instructive than the earlier letter cited by Plaintiffs, which does not constitute OSHA policy.[10]

Thus, formal OSHA policy indicates not only the compatibility of state and local smoking legislation and the OSH Act and regulations, but also the acknowledgment and approval of OSHA with such state and

---

**6.** Greg Watchman, Acting Assistant Secretary of OSHA, stated in a letter dated July 8, 1997 that OSHA was concerned that the particular "synergism of the chemicals in tobacco smoke may lead to adverse health effects even though the PELs are often not exceeded." Watchman Letter (Dkt. No. 1, Ex. H).

**7.** March 30, 1990 letter from Gerard F. Scannell, OSHA, Assistant Secretary, available at http://www.osha.gov/pls/oshaweb/o wad-isp.show_document?p_table=INTERPRETA-TIONS & p_id=19955

**8.** March 3, 1988 letter from Roy Gibbs, OSHA, Director, Office of Science and Technology Assessment, available at http://www.osha.gov/pls/osha web/owad-isp.show_document?p_table=INTERPRETA-TIONS & p_id=19641

**9.** This public notice is available at:

http://www.osha.gov/pls/ oshaweb/owad-isp.show_document?p_table=FEDER-AL_REGISTER & p_id=17288

**10.** Plaintiffs also point to a policy statement written almost fifteen years ago that lists two components of tobacco smoke as examples of contaminants for which PELs have been established. Plaintiffs' P.I. Reply (Dkt. No. 21) at 19. Although this is a policy statement, it is unclear how this shows that there is a PEL for all contaminants or the combination comprising environmental tobacco smoke.

local action. Further, there is nothing in the relevant regulation that suggests that 1910.100 was meant to regulate environmental tobacco smoke in particular, and several OSHA statements specifically refute that contention. The OSH Act, therefore, does not act as a bar to the state and local governments that wish to regulate in this important health and safety area.

### 2. Vagueness

Plaintiffs claim that two separate provisions of Chapter 13 that provide for avoidance of its enforcement render it unconstitutionally vague. First, Plaintiffs challenge the language distinguishing a "bar" from a "food service establishment." Complaint (Dkt. No. 1) at ¶ 65. Second, Plaintiffs challenge the language employed in the criteria for the issuance of a waiver. *Id.* at ¶ 69.

### a. Standard

■■ A statute is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application ...." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (citing *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). "The Due Process Clause requires that laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited,' and to 'provide explicit standards for those who apply them.'" *Gen. Media Communications, Inc. v. Cohen,* 131 F.3d 273, 286 (2d Cir.1997) (citing *Grayned v. City of*

*Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

■ Furthermore, the United States Supreme Court has held that, in examining a facial vagueness challenge to a statute that implicates no constitutionally protected conduct, a court should uphold the vagueness challenge "only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The Court also stated in that case that "[t]he degree of vagueness that the Constitution tolerates ... depends in part on the nature of the enactment," and that "[t]he Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." [11] *Id.* at 498–99, 102 S.Ct. 1186. Also, there is a strong presumption of validity for a statute passed pursuant to state or local police power. *Sanitation and Recycling Indus., Inc. v. City of New York,* 928 F.Supp. 407, 412 (S.D.N.Y.1996), *aff'd* 107 F.3d 985 (2d Cir.1997) (citing *Richmond Boro Gun Club v. City of New York,* 92 CV 151, 1995 WL 422014, at *2 (E.D.N.Y. Feb.23, 1994)).

### b. "Bar" v. "Food Service Establishment"

■ Public Health Law ("PHL") § 1399–o restricts smoking in a number of places, including bars and food service establishments. N.Y.PUB.HEALTH LAW § 1399–o (2003). However, while smoking is prohibited in both the indoor and outdoor areas of bars, smoking is permitted in the outdoor seating areas of food service

---

**11.** Indicative of how broad this standard has been interpreted to be, this facial challenge could not even have been brought in the Sixth Circuit, which has stated that facial challenges are be limited to enactments involving First Amendment rights or providing for criminal penalties. *See Belle Maer Harbor v. Charter Township of Harrison,* 170 F.3d 553, 557 (6th Cir.1999).

establishments. N.Y.PUB.HEALTH LAW § 1399–q (2003). PHL § 1399–n (" § 1399–n") defines a "bar" as "any area, including outdoor seating areas, devoted to the sale and service of alcoholic beverages for on-premises consumption and where the service of food is only incidental to the consumption of such beverages." N.Y.PUB. HEALTH LAW § 1399–n (2003). A "food service establishment" is defined as "any area, including outdoor seating areas, or portion thereof in which the business is the sale of food for on-premises consumption." *Id.* Plaintiffs contend that the distinction between a bar and a food service establishment is unconstitutionally vague, leaving owners, patrons, and enforcement officers unaware of which businesses are permitted to allow smoking in outdoor areas. Complaint (Dkt. No. 1) at ¶ 65. Specifically, Plaintiffs challenge the "incidental to" language contained in the definition of "bar." *Id.*

The Supreme Court has previously ruled that the phrase "incidental to" in reference to businesses passes constitutional muster. In *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court upheld a county criminal law prohibiting Sunday retail sales of everything other than "merchandise essential to, or customarily sold at, or *incidental to*, the operation of" beaches and amusement parks. *Id.* at 428, 81 S.Ct. 1101 (emphasis added). The Court reasoned that "business people of ordinary intelligence ... would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park ...." *Id.* at 428, 81 S.Ct. 1101. The Court determined that the "incidental to" language did not require Maryland business owners "to guess at the statute's meaning to determine what conduct it makes criminal." *Id.*

There is no reason to expect any less from business people in New York. The owners of bars and restaurants in New York State are sufficiently capable of employing their experience and common sense to determine whether what they own and operate is a bar or a food service establishment. Moreover, if experience and common sense are insufficient in a particular instance, the owner can contact the local board of health, designated county official, or the DOH for a determination. Plaintiffs' P.I. Reply Memo. (Dkt. No. 21) at 16. Owners will not be left to guess at the application of the law.

Enforcement officers similarly can use experience and common sense in applying the "incidental to" language. While they may not have the individualized knowledge about each bar or food service establishment that an owner has, it does not follow that there will be *ad hoc*, arbitrary, and/or discriminatory application of the law. In order to impose a civil penalty under Chapter 13, the alleged violator is entitled to a hearing at which evidence concerning the establishment can be presented. N.Y.PUB.HEALTH LAW § 1399–t (2003). Before imposing a penalty, the enforcement officers will have the necessary information to make a determination. If an owner believes that the decision of an enforcement officer is arbitrary and capricious, an Article 78 proceeding brought in the New York State courts is the appropriate avenue for relief.

Although Plaintiffs seem most concerned about the patrons, it appears that it will be easiest for them to determine whether or not smoking is permitted in a particular business. They will not be left to guess at the application of Chapter 13, nor will they be required to contact their local board of health, designated county official, or the DOH. As the Court has

noted above, owners and operators of bars and food service establishments will be able to determine whether they are operating a bar or a food service establishment. Thus, patrons will be able to simply walk in and ask whether smoking is permitted. Furthermore, PHL § 1399–p requires the prominent posting of "smoking" and "no-smoking" signs wherever smoking is regulated by Chapter 13. N.Y.Pub. Health Law § 1399–p. Patrons will be able to ascertain for themselves whether or not smoking is permitted merely by observing prominently posted signs. These quick and easy options for patrons ensure that they will never be uncertain regarding the application of the law.

### c. Waivers

██ Chapter 13 includes a provision pursuant to which enforcement officers may grant waivers, subject to certain criteria:

§ 1399–u. Waiver

1. The enforcement officer *may* grant a waiver from the application of a specific provision of this article, provided that prior to the granting of any such waiver the applicant for a waiver shall establish that:

(a) Compliance with a specific provision of this article would cause undue financial hardship; or

(b) Other factors exist which would render compliance unreasonable.

N.Y.Pub.Health Law § 1399–u (2003) (emphasis added).

Plaintiffs contend that this provision is unconstitutionally vague because the New York State Legislature has not set forth specific criteria for enforcement officers to use in determining whether an applicant has established "undue financial hardship" or that compliance would be "unreasonable." Complaint (Dkt. No. 1) at ¶ 71. In support of their argument, Plaintiffs cite letters from various counties explaining that, as a matter of policy, they will not be granting any waivers whatsoever. *See* Madison County Letter (Dkt. No. 21, Ex. D); Livingston County Letter (Dkt. No. 21, Ex. E); Rensselaer County Letter (Dkt. No. 21, Ex. F); Onondaga County Letter (Dkt. No. 21, Ex. G); Albany County Letter (Dkt. No. 21, Ex. H); Suffolk County Letter (Dkt. No. 21, Ex. I). Plaintiffs also present a statement by Richard W. Svenson ("Svenson"), Director of the DOH Division of Environmental Protection, that states that "[t]he implementation of amended Section 1399–u of the Public Health Law (PHL) regarding waivers will be difficult since the language does not define undue financial hardship and other factors that would render compliance unreasonable. It appears that a future statutory amendment is needed to define specific criteria under which a waiver could be issued . . . ." Svenson July 2003 Memo. (Dkt. No. 21, Ex. A) at 1. They assert that these statements indicate that the waiver provision is unconstitutionally vague.

It was made apparent during oral arguments on the summary judgment motions that Plaintiffs and Defendants disagree about whether counties are required to grant waivers to any business meeting the criteria set forth in PHL § 1399–u (" § 1399–u"). The statute plainly states that an enforcement officer "may," not "shall," grant a waiver if the criteria are satisfied. The use of "may" in the statute indicates a clear desire on the part of the legislature to give enforcement officers permission to exempt business from the dictates of Chapter 13 within certain parameters, but not to require them to do so. Thus, that some counties have decided, for whatever reason, not to grant any waivers does not violate Chapter 13. Furthermore, Plaintiffs conceded at the hearing

that the New York State Legislature is not constitutionally required to have any waiver provision to relieve businesses from any adverse consequences flowing from a smoking ban.

What is also clear from the language, however, is that if a county does choose to grant waivers, they must be granted in accordance with one of the two criteria listed above. The language employed by the legislature in establishing these criteria are commonly used and understood phrases that withstand constitutional challenge.

"Undue financial hardship" is a widely used and accepted phrase in a variety of laws. *See, e.g.,* 20 U.S.C. § 7712 (local educational agency may not have to repay overpayment of federal funds if it can show that such repayment will result in "undue financial hardship" on the agency); 17 U.S.C. § 1202(e) (limiting liability of broadcasters if avoiding proscribed activity is not feasible or if it would create "undue financial hardship"). Further, "undue financial hardship" has been a component of the CIAA since 1989.

The Second Circuit in *Sanitation and Recycling Industry v. City of New York,* 107 F.3d 985 (2d Cir.1997) addressed language nearly identical to, and arguably less clear than, the language at issue in § 1399–u. In that case, the Court upheld a New York City law that limited the terms of all private commercial garbage carting contracts to two years. *Sanitation,* 107 F.3d at 993–94. Current contracts were made terminable at will, unless a carter received a waiver from the termination provision by the New York City Trade Waste Commission. *Id.* at 994–95. In determining whether to grant a waiver, the Commission was to "determine in its discretion whether a waiver of the termination requirement would be consistent with the purposes of" the act, and to con-

sider background information concerning the business, its principals, and the circumstances surrounding the contract's negotiation. *Id.* at 991–92. The Court found that the provision was constitutional, citing *Hoffman Estates'* "broad standard" governing vagueness challenges and stating that the law's recited purposes gave the Commission sufficient legislative direction so as not to render it impermissibly vague. *Id.* at 995; *see also Donovan v. City of Haverhill,* 311 F.3d 74, 77–78 (1st Cir. 2002) (holding constitutionally sufficient a statute authorizing "selectmen" to grant permits "upon such terms as in their opinion the public safety may require").

Other courts have approved the specific phrase "undue hardship," a less definite phrase than "undue financial hardship." In *Jackson Court v. City of New Orleans,* 665 F.Supp. 1235 (E.D.La.1987), *aff'd* 874 F.2d 1070 (5th Cir.1989), the court upheld an ordinance which granted the city council authority to "waive the provisions of [the ordinance] with respect to [an aggrieved] party upon a showing that he would experience undue hardship and that the character of the neighborhood involved would be adversely affected." *Jackson Court,* 665 F.Supp. at 1242. The Eastern District of Louisiana found this language to be "clear and unambiguous." *Id.*

Similarly, statutes that employ the term "unreasonable" have survived constitutional challenges based upon vagueness time and time again, as "unreasonable" is a "widely used and well understood word." *See, e.g. Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (upholding law prohibiting picketing that "unreasonably interfere[s]" with ingress or egress from county courthouses); *see also Bandini Petroleum Co. v. Superior Court,* 284 U.S. 8, 18, 52 S.Ct. 103, 76 L.Ed. 136 (1931) (upholding statute prohibiting "unreasonable waste of natural

gas"); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 34, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (upholding statute prohibiting sale of goods at "unreasonably low prices" for certain purposes).

Furthermore, the DOH has provided specific guidance in the interpretation of these provisions. On August 20, 2003, Svenson circulated a memorandum to all city and county commissioners of health and public health directors providing some initial guidance regarding the issuance of waivers. Svenson Aug. 2003 Memo. (Dkt. No. 21, Ex. B) at 1–2. On December 12, 2003, Svenson issued another memorandum that included very detailed guidance regarding the criteria for the issuance of waivers. Svenson Dec. 2003 Memo (Dkt. No. 42, Ex. C). While these memoranda are non-binding upon local enforcement officers, it nonetheless gives enforcement officers as well as applicants guidance as to the agency's interpretation of the statute. Even if the waiver provision were vague prior to the statements of the DOH, administrative guidance has the potential to save an otherwise vague statute. *Hoffman Estates*, 455 U.S. at 504, 102 S.Ct. 1186.

The language challenged in this case is at least as specific and definite as that referenced in the above-cited cases. Further, in addition to stating that enforcement officers may grant waivers if compliance would present an undue financial hardship or would be otherwise unreasonable, the legislature has also directed that this authority be exercised "subject to such conditions or restrictions as may be necessary to minimize the adverse effects of the waiver upon persons subject to an involuntary exposure to second-hand smoke and to ensure that the waiver is consistent with the general purposes of [Chapter 13]." N.Y.PUB. HEALTH LAW § 1399–u (2003). This guidance exceeds that given to administrators by the statutes in the above-cited cases.

New York State Legislature has afforded local enforcement officers flexibility and discretion in determining whether and when to grant waivers. That counties may establish different criteria for the issuance of waivers within the confines of § 1399–u of Chapter 13 does not render the statute constitutionally infirm, especially considering that counties have been granted the option of not providing waivers at all. The legislature also provided the necessary degree of guidance to enable counties to determine the boundaries of Chapter 13 and to establish criteria within those boundaries.

If, as Plaintiffs fear, enforcement officers in counties that have decided to issue waivers unlawfully reject applications for waivers, that is an enforcement issue, not a federal constitutional issue. Recourse should be sought in the New York State courts via an Article 78 proceeding, attacking the waiver denial as arbitrary and capricious. Plaintiffs claim that this is insufficient, citing the experience of non-plaintiff Jimmy–Mac's in *Elmwood–Anderson Corp. d/b/a/ Jimmy Mac's v. Novello*, 11 A.D.3d 969, 782 N.Y.S.2d 312, 314–15 (4th Dept.2004). In that case, although the Fourth Department held that courts could not compel the issuance of a waiver because it is a discretionary act, it did order the Erie County Commissioner of Health to reformulate the waiver guidelines in accordance with Chapter 13 and re-determine Jimmy Mac's application. *Id.* at 315. Plaintiffs contend that, because the county did not issue new guidelines and make a decision on Jimmy Mac's application within seventeen days of the Fourth Department's decision, such a proceeding affords plaintiffs no real substantive relief. *See* Plaintiffs' S.J. Memo. (Dkt. No. 42) at 8, 23. Plaintiffs' frustration

with the waiver process and the New York State court system, however, does not create a constitutional crisis.

### III. Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that all claims against Defendants New York State, New York State Department of Law, and New York State Department of Health are **DISMISSED**; and it is further

ORDERED, that Defendants' motion for summary judgment as to all remaining claims is **GRANTED**; and it is further

ORDERED, that Plaintiffs' motion for summary judgment is **DENIED** in its entirety; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.